In the Matter of the Estate of ALLEN T. PRIDELL, Deceased.

Surrogate's Court, Jefferson County, August 26, 1954.

*Arthur B. Hart* for Geraldine F. Pridell, as administratrix of the estate of Allen T. Pridell, deceased, petitioner.

*Fred L. Smith* for William E. Pridell, respondent.

SCHWERZMANN, S. This is a proceeding under section 133 of the Decedent Estate Law to approve the settlement of an action for the wrongful death of a minor child, and to resolve the respective rights of the father and mother thereto.

The right of the mother to share in this recovery is conceded, but the right of the father is challenged on two grounds: (a) that the father has precluded himself from participating by abandoning the child within the meaning of section 133 (subd. 4) of the Decedent Estate Law and (b) that there was no such " pecuniary injury " to the father as would entitle him to any part of the proceeds. Both grounds are herein sustained, and the right of the father to participate is denied.

The testimony of the husband and wife is at variance in many particulars, but the following facts are clear. The parties were married on May 22, 1930, permanently separated in January, 1937, under circumstances not clear as to fault, and have

not lived together since. At the time of separation, there were four minor children of the marriage, including the decedent who was then two years of age. On or about March, 1937, the mother instituted a proceeding in the Children's Court of Lewis County to compel support for herself and her children, and a decree was subsequently entered on March 10, 1937, awarding the custody of the children to the mother and directing the father to pay support. There were various orders and modifications entered thereafter with which the father, except for a short period in 1938, had generally complied. As the order required payments only until the youngest child reached the age of sixteen years, contributions thereunder from the father ceased in May, 1952. At all times since the separation, the children have resided with, and have been cared for, by the mother. As she was physically unable to work, and the payments of the husband were not sufficient to support the family, she has been the recipient of public relief since 1943. Prior to 1943, when the father was drafted into the army, he had visited his family on several occasions. Upon his return from military service in 1945, he secured a somewhat questionable Nevada divorce from the petitioner in August of that year, and remarried in the same month. From his remarriage to the date of decedent's death on September 13, 1953, the father had lived within a short distance of the decedent, but had never visited him nor corresponded with him. The father's testimony indicates that he had no knowledge of the deceased child's health, education, or problems during this period.

Under section 133 (subd. 4, par. c) of the Decedent Estate Law a parent is precluded from sharing in damages resulting from the wrongful death of a minor child on two grounds, i.e., abandonment or failure to support. The grounds are in the alternative; either will disqualify an offending parent, neither is a necessary element of the other (*Matter of Musczak,* 196 Misc. 364; *Matter of Schriffrin,* 152 Misc. 33). The statute thus recognizes two separate and distinct responsibilities of a parent to an unemancipated minor child: (a) support and (b) care, training, and guidance during the child's formative years (*Cannon* v. *Cannon,* 287 N. Y. 425; *Matter of Forte,* 149 Misc. 327; *Matter of Griffin,* 159 Misc. 12). The abandonment contemplated by the statute is the neglect or failure to fulfill this latter responsibility of parental care and guidance (*Matter of Musczak, supra; Matter of Schriffrin, supra; Matter of Lascelles,* 68 N. Y. S. 2d 71; *Matter of Herbster,* 121 N. Y. S. 2d 360). While a court order restricting a parent to visitation

may lessen the measure of such parent's obligation, it does not eliminate it. Rather, the inquiry then becomes whether or not the parent has fulfilled this responsibility of care and training to the extent permitted by the order. The conduct of the respondent in the instant case fails to meet even this reduced standard. His failure, for the period of over seven years between his remarriage and death of the decedent, to visit the decedent, correspond with him, make any inquiry or show any concern for the child's health, education, or progress indicates not only a neglect of all such parental responsibilities, but complete indifference and lack of concern for the welfare of the child. In my opinion, the father's conduct constitutes abandonment within the meaning of section 133 (subd. 4) and disqualifies him as a beneficiary.

If the element of abandonment were not present, the absence of any pecuniary injury to the father necessarily bars his recovery. By chapter 639 of the Laws of 1949, section 133 of the Decedent Estate Law was amended to require that the damages recovered in an action for wrongful death be distributed to the respective beneficiaries entitled thereto " in proportion to the pecuniary injuries suffered ". Thus, both section 132 of the Decedent Estate Law which governs the recovery of such damages, and its companion section 133 which governs their apportionment, now utilize the same yardstick, i.e., pecuniary injuries suffered by the respective beneficiaries. Logically, the elements determinative of such loss should be the same under both sections (*Gross* v. *Abraham,* 306 N. Y. 525).

For the purposes of section 132, the measure of " pecuniary injuries " has been stated to be " the reasonable expectancy, or lack of it, of future assistance or support " to the survivors if decedent's life had continued (*Loetsch* v. *New York City Omnibus Corp.,* 291 N. Y. 308, 310). Such expectancy may have as its basis a legal obligation owing from decedent, or it may be predicated upon the probability of his purely voluntary assistance. In the absence, as here, of any legal obligation, our inquiry turns to the question of whether, and to what extent, the respective parties might reasonably have expected to have become recipients of decedent's voluntary help had decedent lived. Factors which may properly be considered in determining this question are the relationship existing between the decedent and the survivor (*Murphy* v. *Erie R. R. Co.,* 202 N. Y. 242; *Houghkirk* v. *President, Mgrs. & Co. of D. & H. Canal Co.,* 92 N. Y. 219); the amount or amounts customarily contributed to the survivor by the decedent (*Grasso* v. *State of New York,*

177 Misc. 690, affd. 264 App. Div. 745, affd. 289 N. Y. 552; *Spreen* v. *Erie R. R. Co.*, 219 N. Y. 533; *De Luna* v. *Union Ry. Co.*, 130 App. Div. 386), and other indicia of a disposition on the part of the decedent to continue to assist the survivor financially (*Loetsch* v. *New York City Omnibus Corp., supra*). The situation of the survivor, his circumstances and condition in life, are likewise pertinent inquiries (*Grasso* v. *State of New York, supra; Birkett* v. *Knickerbocker Ice Co.*, 110 N. Y. 504; *Lockwood* v. *New York, L. E. & W. R. R. Co.*, 98 N. Y. 523); and the fact that the survivor is dependent upon decedent, while by no means a prerequisite to recovery under the statute (*Gross* v. *Abraham, supra*), is nonetheless a consideration of first importance. The probability of dependency, whether legally enforcible against decedent or voluntarily assumed by him, whether present or prospective by reason of a survivor's less fortunate condition in life, has often been a determining factor in cases of this kind (*Matter of Bernardi*, 199 Misc. 919; *Matter of Sintyago*, 198 Misc. 776; *Matter of Reynolds*, 115 N. Y. S. 2d 534; *Matter of Dennison*, 203 Misc. 1004).

With these various considerations in mind, I am of the opinion that this mother had every expectancy of future financial benefit from the continued life of her son; the father had none. The relationship between the father and his deceased child needs little comment. The father, except for blood ties, was practically a stranger to the son having seen him only twice in seven years preceding the son's death. There had been no disposition on the part of the son to voluntarily aid the father during the son's lifetime, and it would be extremely conjectural to anticipate that had the son lived, the father could have expected to have received any reciprocation from him other than in the kind the father had given. The father's testimony itself perhaps best reflects the situation in this respect. When he was asked if he had ever looked to the deceased son for support, he replied, " No, sir, none of them. I'd 'a' been ashamed to take it or ask them for any." The relationship between the mother and the deceased son, on the other hand, had been a perfectly normal one. The son's desire or disposition to help his mother financially, commensurate with his earning capacity, had been demonstrated for a period of two years prior to his death by actual contributions regularly made to her, and she had every reason to anticipate he would voluntarily continue to assist her had he lived. Nor, from the standpoint of comparative condition in the life of the two survivors can there be any serious question as to the mother's right to prevail. The father is a healthy,

working man, never unemployed by reason of sickness; the mother has been physically unable to support herself at any time since the separation. While the father is not a man of means, his earnings are sufficient to support himself and his second wife, and he has never been dependent upon decedent in any manner; the mother, together with one other minor child living with her, was, and for some time has been, dependent upon public assistance supplemented by such other earnings as the deceased son and another child might provide.

The settlement is accordingly approved, the respondent father denied participation in the recovery, and the petitioner mother held entitled to the entire net proceeds. The agreed contingent fee for petitioner's attorney is not considered excessive in view of the additional time and effort required by the present hearing, and is approved.

Submit decree.