OPINION OF THE COURT
Lee L. Holzman, J.
The decedent’s sister and brother (the petitioners) move for summary judgment granting their petition for the issuance of letters of administration to their designee and dismissing the cross petition of the decedent’s father for the issuance of letters of administration to himself and his designee. The petitioners contend that the decedent’s father, her sole presumptive *985 distributee, is disqualified from taking a distributive share in her estate under EPTL 4-1.4 (a) on the alternative grounds that he failed or refused to provide for her or that he abandoned her and, consequently, her estate should be distributed to them under EPTL 4-1.1 as though her father had predeceased her (EPTL 4-1.4 [b]).
The decedent died tragically on September 11, 2001 in the World Trade Center attacks, a week short of her 28th birthday. After the depositions of the parties had been taken and the instant motion had been served, the court granted the application of the father’s attorney to be relieved as counsel based upon a sworn letter from the father discharging her (Matter of Gonzalez, NYLJ, May 12, 2003, at 22, col 1). Although afforded time and an extension of 25 days to oppose this motion, the now pro se father submitted no admissible evidence in opposition. Instead, he faxed to the court inadmissible unsworn ex parte statements proclaiming his love for the decedent and copies of photographs which are apparently supposed to show the father, the decedent and various family members together. In any event, the petitioners do not deny that they and the decedent had occasional visits with their father. Accordingly, the court must determine whether, in the absence of opposition, the petitioners have sustained the burden of proof borne by a party alleging an abandonment or failure to support (see Matter of Clark, 119 AD2d 947 [1986]).
The petitioners contend that summary judgment should be granted on the basis of the sworn deposition testimony of the father as well as their own sworn statements. The decedent’s parents were never married and it appears that they were unable to maintain a home for their three children, the decedent and the petitioners. The decedent’s mother died in February 2001. Although the father’s version of the facts varies from that of the petitioners in some details, his testimony confirms that he relocated to Florida with his mother when the decedent was approximately seven years old, leaving both of his daughters in the care of their maternal grandmother and great grandmother, and his son with foster parents, and that he provided virtually nothing for any of the children by way of support while they were minors. He claims that he left the children with others because he knew they would be better off with them and that he provided no support for the decedent and her sister because he was not asked to do so and because he believed that both of them received public assistance. The father testified that the people who raised the children would *986 have been brokenhearted if he had attempted to move them to Florida. The father conceded that there were times when he was employed and that he purchased realty with an inheritance that he received from his father. The father further testified that he saw the decedent occasionally when he visited New York or when she came to Florida (his memory was not clear as to how many times); that on her last trip to Florida the decedent had only one meal with him and other relatives, for which she paid; and that the twice yearly phone conversations that he alleges he had with the decedent were placed by her, not him.
Even though the decedent worked in the World Trade Center for a year prior to her death, her father was not aware of this until after her death. Nevertheless, upon learning of her death, he received a total of $53,000 from the decedent’s employer and the Red Cross as her next of kin. The decedent’s employer also paid for his transportation to New York City, hotel accommodations and food.
In order for the court to grant summary judgment, it must clearly appear that no material triable issues of fact are present (Phillips v Kantor & Co., 31 NY2d 307 [1972]; Glick & Dolleck v Tri-Pac Export Corp., 22 NY2d 439 [1968]). The party moving for summary judgment must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact (Alvarez v Prospect Hosp., 68 NY2d 320 [1986]; Winegrad, v New York Univ. Med. Ctr., 64 NY2d 851 [1985]; Zuckerman v City of New York, 49 NY2d 557 [1980]). The court’s task upon being presented with such a motion is not issue determination but merely the determination of whether any such material issues of fact exist (Barr v County of Albany, 50 NY2d 247, 254 [1980]; Daliendo v Johnson, 147 AD2d 312, 317 [1989]).
EPTL 4-1.4 (a), which applies to both marital and nonmarital parents, provides
“No distributive share in the estate of a deceased child shall be allowed to a parent who has failed or refused to provide for, or has abandoned such child while such child is under the age of twenty-one years, whether or not such child dies before having attained the age of twenty-one years, unless the parental relationship and duties are subsequently resumed and continue until the death of the child * * * ”
*987 A parent may be disqualified from sharing in a child’s estate on the alternative grounds of a failure or refusal to provide for the child or the abandonment of the child (Matter of Baecher, 198 AD2d 221 [1993], lv denied 83 NY2d 751 [1994]). Neither “failed * * * to provide for” nor “abandoned” is defined in EPTL 4-1.4 (a). However, there is no reason why the criteria for establishing an abandonment sufficient to dispense with the consent of a parent to an adoption proceeding (Domestic Relations Law § 111 [2] [a]; [6]) should not also be used in parental disqualification proceedings under EPTL 4-1.4. Thus, with regard to abandonment, the issue is whether the father evinced an intent to forego his parental rights as manifested by his failure to visit with the decedent or to communicate with her when she was a child, although clearly able to do so (Domestic Relations Law § 111 [2] [a]). Moreover, neither insubstantial or infrequent visits or communications by the father with the child, nor his subjective intent, are sufficient to preclude a finding of abandonment (Domestic Relations Law § 111 [6]).
Here, the father’s alleged long-distance love and his occasional visits with the decedent do not constitute the “natural and legal obligations of training, care and guidance owed by a parent to a child” (Matter of Arroyo, 273 AD2d 820, 820 [2000]). The father admitted that even when he was in New York, he never taught the decedent anything, never took her to the park, and never attended her birthday parties. Although he readily excuses himself for his failure as a parent (e.g., the parks are dangerous, he couldn’t afford birthday presents), the picture he presents is of a parent who was perfectly satisfied to have others take the responsibility of caring for the decedent and her siblings when they needed care and support, and he cannot, after the fact, establish a parental relationship nunc pro tunc. Taking the father’s testimony at face value, it reveals a father who, regardless of his motives, elected to absent himself from the decedent’s life, except for “insubstantial and infrequent contacts” which are “ [insufficient] to preclude a finding of abandonment” (Matter of Wendy “B” v Ronald “B”, 53 AD2d 160, 162 [1976]). The fact that after attaining the age of 21 years, the decedent once went to dinner with her father and other members of his family and paid for that dinner does not establish that her father resumed his parental responsibility toward her. His lack of knowledge about where the decedent was employed for the last year of her life indicates that he never assumed or resumed his parental responsibility.
Parents have a duty to support their minor children in accordance with their means (Family Ct Act § 413). The decedent’s *988 father made no claims of unwitnessed cash payments to the decedent or the grandmother with whom she lived. He frankly stated that he never offered support to either one, even though he believed that the decedent was on public assistance. Although it appears that the father’s employment record was sporadic and that at various periods of his life he might not have had the means to make any significant contribution to the decedent’s welfare, this fact does not excuse his failure to make any contribution whatsoever to the decedent’s support when he was working or when he received an inheritance from his father. Moreover, his reliance upon “the fortuitous fact that another person supported the child while under no legal obligation to do so” cannot help him (Matter of Brennan, 169 AD2d 1000, 1001 [1991]). As this court discussed in Matter of Maracallo (NYLJ, May 12, 1999, at 32, col 1), EPTL 4-1.4 imposes an equitable penalty upon parents who fail to fulfill their obligations of support under Family Court Act § 413.
Without in any way denigrating the father’s claim that he loved the decedent and that he had her best interests at heart when he left her to be raised by her grandmother, his claims and his subjective feelings, no matter how sincere, are unsupported by evidence of any financial support or active parental involvement. Thus, they are simply insufficient to withstand the motion for summary judgment (Matter of Arroyo, supra).
Accordingly, the court holds that the petitioners are entitled to summary judgment on the alternative grounds that the cross petitioner abandoned and failed to support the decedent during her minority and that he had not resumed his parental responsibilities and duties at the time of the decedent’s death (EPTL 4-1.4 [a]). Consequently, he is not entitled to a distributive share of the decedent’s estate or to share in any wrongful death recovery (EPTL 4-1.4 [b]; 4-1.1, 5-4.4 [a]).