■ In the Matter of the Claim of ELSIE CALDWELL, Appellant, et al., Claimant, v ALLIANCE CONSULTING GROUP, INC., et al., Respondents. WORKERS' COMPENSATION BOARD, Respondent.
[775 NYS2d 92]—

Rose, J. Appeal from a decision of the Workers' Compensation Board, filed August 21, 2002, which, inter alia, ruled that decedent's father was entitled to a share of the death benefit award made in accordance with Workers' Compensation Law § 16 (4-b).

In this case of statutory construction, the Workers' Compensation Board has interpreted the term "parent" in Workers' Compensation Law § 16 (4-b) as meaning simply the biological father and mother of a child. On the other hand, claimant Elsie Caldwell urges a conditional interpretation in order to reach her goal of revoking a statutory parental right. While this Court need not defer to the Board because its special expertise is not involved here (*see Matter of Belmonte v Snashall*, 304 AD2d 211, 213-214 [2003], *lv granted* 100 NY2d 513 [2003]), its interpretation is nonetheless sound as a matter of pure statutory construction because it comports with the plain meaning of the term "parent" (*see Castro v United Container Mach. Group*, 96 NY2d 398, 401 [2001]).

Where, as here, the term at issue does not have a controlling statutory definition and is clear and unambiguous, "courts should construe the term using its 'usual and commonly understood meaning' " (*Matter of Orens v Novello*, 99 NY2d 180, 185-186 [2002], quoting *Rosner v Metropolitan Prop. & Liab. Ins. Co.*, 96 NY2d 475, 479 [2001]; *see* McKinney's Cons Laws of NY, Book 1, Statutes § 232). The term "parent" is not defined in the Workers' Compensation Law but, according to the definition in Black's Law Dictionary, the term "parent" includes: "(1) either the natural father or the natural mother of a child, (2) the adoptive father or adoptive mother of a child, (3) a child's putative blood parent who has expressly acknowledged paternity, and (4) an individual or agency whose status as guardian has been established by judicial decree" (Black's Law Dictionary 1137 [7th ed 1999]). There is nothing in Workers' Compensation Law § 16 (4-b) to indicate that the Legislature intended the meaning of "parent" to vary from these obvious and commonly accepted definitions. Since the Board's interpretation of the statute reflects the commonly understood meaning of "parent" as a "biological mother [or father] of the child" (*Matter of Alison D. v Virginia M.*, 77 NY2d 651, 656 [1991]),

and since the father's parental rights were never terminated pursuant to Social Services Law § 384-b (*see e.g. Matter of Gabrielle HH.*, 306 AD2d 571 [2003], *lv granted* 100 NY2d 512 [2003], *reconsideration denied* 1 NY3d 538 [2003]), the Board's determination should not be disturbed.

As the dissent notes, parents who fail to provide for or who abandon their child are expressly disqualified by statute from inheriting from a child who dies intestate and from receiving the proceeds of an action for the wrongful death of the child. However, the Legislature provided no comparable exclusion in Workers' Compensation Law § 16 (4-b), and this omission is an indication that no such exclusion was intended (*see People v Tychanski*, 78 NY2d 909, 911 [1991]; *Matter of Excellus Health Plan v Serio*, 303 AD2d 864, 868 [2003], *lv granted* 100 NY2d 505 [2003]; McKinney's Cons Laws of NY, Book 1, Statutes § 74). Here, the father's parental rights were never terminated, the Board clearly lacked statutory authority to make such a determination, the father was ordered to provide financial support for his child and his share of the death benefit award is subject to a Family Court order pursuant to Workers' Compensation Law § 33. Accordingly, we affirm the decision of the Board.

Crew III, J.P., Spain and Mugglin, JJ., concur.

Lahtinen, J. (dissenting). I respectfully dissent. The issue on appeal is whether Workers' Compensation Law § 16 (4-b) compels the conclusion that a father who abandoned his son shortly after the child's birth and had virtually no contact with the child for nearly 30 years is nevertheless entitled to one half of the death benefit provided in such statute. Decedent's life was tragically taken from him at the age of 30 when he perished as a result of terrorist attacks while he was working at the World Trade Center on September 11, 2001. The undisputed facts[1] establish that decedent was born in February 1971 and, in September 1972, his father, claimant Leon W. Caldwell, voluntarily left the marital home in Philadelphia and moved to New Jersey. Thereafter, decedent had contact with his father on only two occasions. He spent one night at his father's home when he was six years old and he saw him, but did not speak to him, at the funeral of decedent's maternal grandmother in January 1984. The suggestion of claimant Elsie Caldwell (hereinafter claimant) to Caldwell that he spend time with decedent and his brother was rejected by him.

---

1. Although no testimony is set forth in the record, the attorney for claimant Elsie Caldwell set forth factual allegations in various letters and memoranda. Claimant Leon W. Caldwell, the father, has not contested any of the facts.

In addition to providing no emotional or nurturing support, Caldwell failed to provide financial support for his children. Claimant eventually obtained a court order for support, but Caldwell failed to make payments. Arrears in excess of $20,000 allegedly accrued. Claimant worked at a series of jobs, she pursued further education and, at times, was forced to rely on public assistance to support her two sons. Despite economic obstacles, she successfully raised her two sons alone. Decedent's brother earned a Ph.D. and, at the time of his death, decedent was a college graduate with an ostensibly successful career in New York City.

Decedent was unmarried and had no dependents when he died. Claimant thus filed a claim for the $50,000 death benefit provided by Workers' Compensation Law § 16 (4-b). Caldwell intervened in the claim, seeking one half of the benefit. Following a hearing and the submission of written legal arguments, the Workers' Compensation Law Judge directed the payment of $25,000 to claimant and $25,000 to Caldwell. The Workers' Compensation Board modified only to the extent of holding Caldwell's payment in abeyance pending a determination of whether he owed arrears for support (*see* Workers' Compensation Law § 33).[2]

Workers' Compensation Law § 16 (4-b) provides in pertinent part that, in the event an employee is not survived by a spouse, child or certain other disabled or dependent individuals, then the employee's death benefit "shall be paid to the deceased's surviving parents." Since no conditions are placed upon the term "parents" in the subdivision, the Board concluded that Caldwell qualified for one half of the benefit. It has long been an axiom in this state, however, that "the legislature is presumed to have intended to do justice, unless its language compels the opposite conclusion" (*People ex rel. Beaman v Feitner*, 168 NY 360, 366 [1901]; *see* McKinney's Cons Laws of NY, Book 1, Statutes §§ 141, 146). Justice is not fostered by rewarding in any fashion a parent who purposefully fails to provide any emotional, nurturing and/or financial support to a child. It has been the concerted policy of this state—and, indeed, the nation—to attempt to require responsible conduct by individuals who procreate and not to allow a dividend to flow from dereliction (*see e.g.* Personal Responsibility and Work Opportunity Reconciliation Act of 1996 [Pub L 104-193]; Child Support Standards Act [L 1989, ch 567]; Child Support Enforce-

---

2. Only claimant appeals the Board's decision. The Attorney General, who represents the Board in appeals, elected "not to file a responding brief," nor did Caldwell file a brief.

ment Amendments of 1984 [Pub L 98-378]; *Matter of Tompkins County Support Collection Unit v Chamberlin*, 99 NY2d 328 [2003]; *Matter of Dutchess County Dept. of Social Servs. v Day*, 96 NY2d 149 [2001]; *Matter of Clara C. v William L.*, 96 NY2d 244 [2001]). Thus, while the Legislature provided little elucidation in the specific relevant subdivision of the Workers' Compensation Law, it has spoken strongly and consistently in opposition to interpretations or schemes that award those who abandon their obligations to their children.

The Legislature's intentional embracing of the important public policy implicated in not permitting a parent to profit from the demise of a child whom the parent had abandoned finds further support in this state's intestacy and wrongful death statutes. It has been observed that "[i]nheritance laws, like child-support statutes, reflect social values about [the] family," and such laws "also convey society's view of certain privileges which attach to family relationships and the people included in the definition of family" (Monopoli, *"Deadbeat Dads": Should Support and Inheritance Be Linked?*, 49 U Miami L Rev 257, 258-259 [1994]). Under New York law, a parent who abandons a child may not receive any distributive share from a child who dies intestate (*see* EPTL 4-1.4). Similarly, such a parent is disqualified from a share of wrongful death proceeds (*see* EPTL 5-4.4 [a] [2]; *Matter of Arroyo*, 273 AD2d 820 [2000], *lv denied* 95 NY2d 763 [2000]; *Matter of Baecher*, 198 AD2d 221 [1993], *lv denied* 83 NY2d 751 [1994]). Moreover, this principle— which is little more than an articulation of common sense—has roots in the common law (*see Perry v Williams*, 133 NM 844, 849, 70 P3d 1283, 1288 [2003] ["(u)nder the common law, the right of a parent to the services of the child or the child's earnings was linked to the parent's actual support of the child"]) and, while contrary authority exists, has been applied in other jurisdictions (*see generally* Annotation, *Parent's Desertion, Abandonment, or Failure to Support Minor Child as Affecting Right or Measure of Recovery for Wrongful Death of Child*, 53 ALR3d 566, § 3 [a]; § 5 [a]).

The Court of Appeals has recently instructed that "[i]n cases where the term at issue does not have a controlling statutory definition, courts should construe the term using its 'usual and commonly understood meaning' " (*Matter of Orens v Novello*, 99 NY2d 180, 185-186 [2002], quoting *Rosner v Metropolitan Prop. & Liab. Ins. Co.*, 96 NY2d 475, 479 [2001]). In seeking assistance for the commonly understood meaning of a statutory term, the Court in *Matter of Orens v Novello* (*supra* at 185-186) considered definitions of a word provided in Merriam-Webster's

Collegiate Dictionary (10th ed) and Black's Law Dictionary (7th ed). Under its definition for "parent," Black's states that "[i]n ordinary usage, the term denotes *more than* responsibility for conception and birth" (Black's Law Dictionary 1137 [7th ed 1999] [emphasis added]).[3] Merriam-Webster's defines a "parent" as not only "one that begets or brings forth offspring," but also "a person who brings up and cares for another" (Merriam-Webster's Collegiate Dictionary 844 [10th ed 2002]).

I am not persuaded that the statutory language at issue compels a conclusion contrary to common sense and the well-established policies of this state regarding parenting. The language of the statute permits a construction in which "absurdity and mischief may be avoided" (*Matter of Rouss*, 221 NY 81, 91 [1917], *cert denied* 246 US 661 [1918]). I would thus decline to construe Workers' Compensation Law § 16 (4-b) as mandating a death benefit to a surviving biological parent who has refused to assume his parental responsibilities by failing to bring up, care for, or support his child.[4]

I would reverse the Board's decision and remit the matter for such further development of the record as the Board may deem necessary and then a factual determination by the Board as to whether Caldwell is disqualified from receiving benefits.

Ordered that the decision is affirmed, without costs.

---

3. Unlike the majority, I read the four examples in Black's as illustrative, but not exclusive.

4. The majority is ostensibly willing to consider Workers' Compensation Law § 16 (4-b) in conjunction with Social Services Law § 384-b. However, even a termination of parental rights under that statute cannot change the fact that Caldwell is the biological father of decedent, a fact upon which the majority places dispositive reliance. Moreover, an issue exists regarding the relevancy of Social Services Law § 384-b to the current facts since claimant is a long-time resident of Pennsylvania and Caldwell's residency is not clear from the record.