OPINION OF THE COURT
Julie A. Campbell, S.
This is a contested proceeding for the appointment of an administrator for the estate of Jason Pessoni, who died intestate on May 20, 2005, survived by his parents, John Pessoni and Mary Ann Loehmann, and his brother, Eric Pessoni. The estate consists of personal property having a value of approximately $10,000 and a cause of action for conscious pain and suffering and wrongful death. On June 15, 2005, decedent’s father, John *246 Pessoni, filed a petition for letters of administration. On July 15, 2005, decedent’s mother, Mary Ann Loehmann, filed a petition for letters of administration. On July 27th and August 22nd, Ms. Loehmann and Mr. Pessoni, respectively, filed objections to each other’s petitions.
Ms. Loehmann has moved for summary judgment with respect to the applicability of EPTL 4-1.4. Ms. Loehmann disputes Mr. Pessoni’s qualification as distributee based on EPTL 4-1.4 (a), which prohibits a parent from any distributive share in the estate of a deceased child where such parent “has failed or refused to provide for, or has abandoned” such child before age 21, and has not resumed the parent-child relationship prior to the child’s death.
In support of her summary judgment motion Ms. Loehmann has submitted the transcript of John Pessoni’s deposition testimony which establishes that he and Mary Ann Loehmann separated when the boys were very young and, thereafter, for a time, he exercised some visitation with them. In 1983 he remarried; in 1985 he and his new wife had a son; and sometime in the mid-1980s he stopped seeing or talking to Eric and Jason. He states that he gave up trying to exercise any visitation or maintain any contact in 1989, when Jason moved upstate.[1] He acknowledges that he never saw or spoke to Jason at least from the time he was 15 years old through to his death. He attributes that in part because he didn’t know Jason’s whereabouts. However, during the last year and a half he has been in contact with Eric, who knew his brother’s whereabouts; John Pessoni’s parents were in touch with and saw the boys right up until the paternal grandmother’s death five years ago; and Jason wrote at least two letters to his father in 1993 when he was in the Marine Corps. Thus, it would appear that he had the means to determine Jason’s whereabouts during his adulthood had he had any interest in doing so. Mr. Pessoni never saw Jason or had any contact with him after Jason got out of the Marines. Rather, he testified that he was waiting for the boys to come to him.
Abandonment within the meaning of EPTL 4-1.4 has been defined as “a voluntary breach or neglect of the duty to care for and train a child, and the duty to supervise and guide the child’s growth and development” (Matter of Emiro, 5 Misc 3d 1002[A], 2004 NY Slip Op 51149[U], *7 [Sur Ct, Westchester County *247 2004]). The issue is whether the father evinced an intent to forgo his parental rights as manifested by his failure to visit with the decedent or to communicate with him while he was a child (Matter of Gonzalez, 196 Misc 2d 984 [Sur Ct, Bronx County 2003]). The abandonment contemplated by the statute includes the withholding of one’s presence, care and the opportunity to display voluntary affection (In re Herbster’s Estate, 121 NYS2d 360 [Sur Ct, Monroe County 1953]). It is a voluntary breach or neglect of the duty to care for and train a child, and the duty to supervise and guide his growth and development (ibid.). A father’s long-distance love and occasional visits do not constitute the “natural and legal obligations of training, care and guidance owed by a parent to a child” (Matter of Gonzalez, supra at 987, quoting Matter of Arroyo, 273 AD2d 820, 820 [4th Dept 2000]). Incidental acts, including occasional visits or the occasional giving of money to the child, fall far short of showing a willingness to perform parental duties and to provide a child with the parental care and attention to which he is entitled (ibid.). Neither insubstantial or infrequent visits or communications, nor the father’s subjective intent, are sufficient to preclude a finding of abandonment (Matter of Gonzalez, supra at 987, citing Domestic Relations Law § ill [6]). Merely being on speaking terms at the time of death does not constitute a resumption of parental relationship and duty so as to remove the disqualification (38 NY Jur 2d, Decedents’ Estates § 142).
The evidence here, primarily the father’s own deposition testimony, clearly established that John Pessoni had no contact with Jason since at least 1989 and continuing through Jason’s death, with the exception of a few letters exchanged in 1993.
Initially, the father asserts that the court should only be concerned with facts up to 1996, when Jason became 21, and that anything between that year and the date of death is irrelevant. That argument is contrary to the statute which requires that the court consider whether “the parental relationship and duties are subsequently resumed and continue until the death of the child” (EPTL 4-1.4 [a]). In the instant case it is highly relevant that, even after the child reached the age of majority, no relationship was resumed.
The father here argues that inasmuch as he paid child support he cannot be found to be disqualified under EPTL 4-1.4. The mother does not dispute that the father paid child support pursuant to a court order. However, she asserts that he *248 otherwise neglected and abandoned decedent, at least from the time he was approximately 15 years old, and continuing to the time of death at age 30.
Estates Powers and Trusts Law § 4-1.4 (a) provides in pertinent part:
“No distributive share in the estate of a deceased child shall be allowed to a parent who has failed or refused to provide for, or has abandoned such child while such child is under the age of twenty-one years, whether or not such child dies before having attained the age of twenty-one years, unless the parental relationship and duties are subsequently resumed and continue until the death of the child.”
The statutory criteria are set forth in the conjunctive. Disqualification of a parent under the statute may be premised on either of two criteria: (1) failure or refusal to support the child or (2) abandonment of the child. “These two criteria are separate and distinct, and, therefore, proof of either will cause the parent to be disqualified” (Matter of Emiro, supra at *5; see also Estate of Kris Robert Hughes, NYLJ, Mar. 29, 2002, at 23, col 3; Matter of Pridell, 206 Misc 316 [Sur Ct, Jefferson County 1954]). The statute recognizes the separate and distinct responsibilities for support of a child and for care, training and guidance during the child’s formative years. The abandonment contemplated by the statute is the neglect or failure to fulfill the latter responsibility of care and guidance (Matter of Pridell, supra). The burden is on the party asserting disqualification and the proof of abandonment must be clear (ibid.; 38 NY Jur 2d, Decedents’ Estates § 142).
Consequently, where the evidence establishes that the father made child support payments pursuant to a court order, but otherwise neglected and abandoned decedent, he is not entitled to inherit from the estate of the decedent (Matter of Daniels, 275 App Div 890 [1949]; Matter of Chernega, 54 Misc 2d 137 [Sur Ct, Broome County 1967]). “Abandoned” under the statute connotes a failure by a parent, for a material period prior to the child’s death, to perform the duties of care and training of a child recognized as essential for the development of the rising generation (Matter of Schiffrin, 152 Misc 33 [Sur Ct, Kings County 1934]). Upon a determination of dereliction in that duty, the question of whether that parent had failed to perform his duty of support is immaterial (ibid.). A father who paid support, but otherwise had no involvement in his child’s life is not *249 entitled to inherit (Matter of Guilianelli, 7 Misc 2d 171 [Sur Ct, Saratoga County 1957], citing Matter of Schiffrin, supra).
The father here also argues that his 15-plus-year estrangement from his sons was the fault of their mother who “poisoned” them against him. Such mitigating circumstances or reasons for a parent’s abandonment of his children, even if supported by credible evidence,[2] are immaterial to an inquiry under EPTL 4-1.4. The sole inquiry is whether the parent did or did not, in fact, by his own voluntary action discontinue performance of his legal duty of personal training and care of his children (Matter of Schiffrin, supra). It has been noted that if the other parent were to blame for his separation from his children, he had legal remedies he could have pursued through the courts (Matter of Emiro, supra; Matter of Schiffrin, supra). Even a court order restricting parental visitation, while it may lessen the measure of the parent’s obligation, does not eliminate it, so that, in determining whether the noncustodial parent has fulfilled his responsibility of care and training to the extent permitted by the order, the test is whether there is a failure to meet even this reduced standard (37 NY Jur 2d, Death § 274). The fact is that, regardless of his motives, the father here elected to absent himself from decedent’s life and is thereby disqualified from inheriting (Matter of Gonzalez, supra). The father here did not even exercise his court-ordered visitation rights, nor did he pursue any legal remedy to their alleged denial. Such failure to avail oneself of court-ordered visitation evinces an intent to voluntarily relinquish such rights (see Estate of Kris Robert Hughes, supra).
In the case of Matter of Pridell (supra), where it was established that the father had failed for a period of seven years between his remarriage and the child’s death to visit the child, to correspond with him, or make any inquiry or to show any concern for his health, education or progress, the court found that the evidence indicated not only a neglect of all parental responsibility, but also a complete indifference and lack of concern for the welfare of the child, so as to constitute abandonment within the meaning of the statute.
In opposition to this motion Pessoni has submitted an (unsworn) letter from the Director of the Ocean County Veterans *250 Service Bureau stating that “since the death of his son Eric [sic] Mr. Pessoni is inconsolable in his grief,” and an affidavit from his wife of 22 years telling the court what “a wonderful father” he is. And he asks the court to consider his exemplary life as a decorated combat veteran. The court has no doubt that Mr. Pessoni is inconsolable over the death of a son from whom he had been estranged for 15 years. And while his wife may view him as a wonderful father, that would be in relation to another son, not the son who is the subject of this proceeding. Likewise, with respect to his many credits as a veteran, husband and provider, those qualities, however admirable, did not inure to the benefit of Jason and, consequently, have no relevance to the issue before the court.
“It has long been an axiom in this state . . . that ‘the legislature is presumed to have intended to do justice, unless its language compels the opposite conclusion’ ” (Matter of Caldwell v Alliance Consulting Group, 6 AD3d 761, 764 [3d Dept 2004], quoting People ex rel. Beaman v Feitner, 168 NY 360, 366 [1901]; see, also, McKinney’s Cons Laws of NY, Book 1, Statutes §§ 141, 146). Justice is not fostered by rewarding in any fashion a parent who purposefully fails to provide any emotional or nurturing support to a child (Matter of Caldwell v Alliance Consulting Group, supra). No dividend should be permitted to flow from the dereliction of that duty (ibid.). The obvious intent and purpose of EPTL 4-1.4 is to prevent this precise scenario, i.e., a parent who has been no part of the child’s life showing up to share the spoils of his death.[3] The statute reflects society’s view “of certain privileges which attach to family relationships” (ibid. at 765, quoting Monopoli, “Deadbeat Dads”: Should Support and Inheritance Be Linked?, 49 U Miami L Rev 257, 258-259 [1994]). It is difficult to imagine a case more suited to the application of the statute.
Ms. Loehmann has satisfactorily established Mr. Pessoni’s ineligibility to be a distributive beneficiary under decedent’s estate. As a parent who has abandoned the child during his minority, the father is disqualified from sharing in the son’s estate (EPTL 4.1-4). Consequently, he lacks standing to receive *251 letters of administration (SCPA 1001) and her motion for summary judgment will be granted and his petition for letters of administration will be dismissed.
Accordingly, Ms. Loehmann is the only petitioning party with standing.

. At age 14 or 15 Jason witnessed a murder and was placed in the witness protection program.

. It should be noted that his own testimony was inconsistent in this regard. While alleging, on the one hand, that Ms. Loehmann thwarted or prevented his visitation with the boys, he also asserts, on the other hand, that she would bring them to stay with him when she wanted to go out.

. For what its worth, a wrongful death award is divided between the eligible distributees in proportion to their pecuniary loss (Hanson v County of Erie, 120 AD2d 135 [4th Dept 1986]; 37 NY Jur 2d, Death § 451). Consequently, here, where the decedent was planning to relocate to reside with the mother to care for her during her illness and had no contact or relationship with the father for more than 15 years, even if the father were eligible to share a distributive award, it would appear that his share would be negligible, if any.