OPINION OF THE COURT
David F. Everett, S.
Blind application of the Kaiser formula (Matter of Kaiser, 198 Misc 582 [1950]) can result in the inequitable and unjust distribution of proceeds from a wrongful death action. In estate matters involving a wrongful death recovery, it is the obligation of counsel to ensure that careful consideration be given to the particular circumstances surrounding a decedent’s distributees to ensure an equitable and appropriate distribution in each and every case. There are instances where the “years of dependency” formula at the heart of Kaiser is appropriate. There are also instances where its rigid application is not only ill-advised, but would lead to inequitable consequences which do not serve the best interests of a decedent’s distributees. Under those circumstances, it is incumbent upon counsel, in their submissions to the surrogate, to deviate from Kaiser and propose an alternate method of calculation in order to achieve a fair and just result. The miscellaneous proceeding currently before this court is one of those instances.
Petitioner Deena Delmoro, as executrix of the estate of Ronald A. Delmoro also known as Ronald Anthony Delmoro (decedent), commenced the instant proceeding seeking a decree: (i) authorizing her to settle a medical malpractice cause of action for $2.45 million against defendants Daniel Solomon, M.D., Kalyani Bhuta, M.D., Douglas R. Mailly, M.D., and Ian M. Matsuura, M.D./Nighthawk Radiology Services LLC, arising from decedent’s wrongful death; (ii) allocating the proceeds of the settlement between the pending causes of action for wrongful death and conscious pain and suffering; (iii) fixing and determining legal fees; (iv) approving the distribution of the wrongful death proceeds according to the Kaiser formula; and (v) settling her account, together with related relief. Jurisdiction is complete.
Under the circumstances before the court, the petition must be granted in part and denied in part for the reasons set forth below.
Decedent died testate on August 16, 2009, allegedly due to medical malpractice. He is survived by petitioner, his wife, *630 who, in her capacity as executrix, commenced the above referenced medical malpractice/wrongful death action. Decedent is also survived by his four children, two of whom, Stephen Delmoro and Daniel Delmoro, were under the age of 21 at the time of his death.
Upon review of the submissions, the court finds that the proposed settlement of the underlying lawsuit is fair and reasonable in light of the facts and circumstances surrounding decedent’s death, and grants that portion of the petition which seeks authorization to settle the medical malpractice/wrongful death action for $2.45 million. The filing of a bond is dispensed with. The court also grants that portion of the petition that seeks to allocate the settlement proceeds at 81.63% to wrongful death and 18.37% to conscious pain and suffering.[1]
However, the portion of the petition that seeks approval of a distribution of the wrongful death proceeds according to the arithmetic (fractional) formula set forth in Kaiser is denied. While Kaiser is a landmark case in the field of estate law, adherence to its distribution formula is not appropriate in circumstances such as those presented here, where the resulting distribution would inequitably penalize a distributee without proper justification.
How the Kaiser Formula is Typically Applied
Under Kaiser, a decedent’s spouse and children under the age of 21 at the time of the decedent’s death each receive a share of the wrongful death proceeds. The amount of each share is determined by a fraction in which the denominator is the sum of the number of years of anticipated dependency of the surviving spouse plus the total number of years of anticipated dependency of all children under 21 at the time of the decedent’s death. The numerator for each such distributee is the number of that distributee’s years of anticipated dependency (Matter of Acquafredda [Czygier], 189 AD2d 504, 505 n 1 [1993]). The anticipated dependency period for the decedent’s spouse is the shorter of either the spouse’s own life expectancy or the decedent’s life expectancy, as measured by recognized mortality tables (id.). The anticipated dependency period for each child is measured by the number of years from the date of decedent’s death until the child reaches the age of 21 (id.).
*631 How the Application of Kaiser Would Affect the Instant Case
In the instant case, decedent’s wife (the petitioner) is currently 57 years of age and decedent’s offspring are currently ages 22, 25, 38 and 40.[2]
At the time of his death, decedent was 61 years of age, with a life expectancy of 20.8 years, and petitioner was 51, with a life expectancy of 32.4 years. Therefore, in a Kaiser calculation, the anticipated dependency period for petitioner is 20.8 years, as that figure represents the lesser of the two life expectancies. With respect to the two youngest offspring, Stephen was 17 years of age, with an anticipated period of dependency of 3.99 years, while Daniel was 20 years of age, with an anticipated period of dependency of 0.17 years.
Following the fractional formula set forth in Kaiser, the denominator for each fraction would be 24.96 (the sum of the years of anticipated dependency of petitioner, Stephen and Daniel, or 20.8 + 3.99 + 0.17 = 24.96). Petitioner’s numerator would be 20.8, and her fractional share 20.8/24.96; Stephen’s numerator would be 3.99, and his fractional share 3.99/24.96; and Daniel’s numerator would be 0.17, and his fractional share 0.17/24.96. Converting the fractions to percentages, under Kaiser, the distribution of the wrongful death portion of the settlement proceeds to decedent’s wife and two youngest offspring would be as follows: 83.33%, or $1,381,624.27 to petitioner; 15.999É) or $265,116.27 to Stephen; and 0.68<%; or $11,274.51 to Daniel. The resulting disparity of over a quarter of a million dollars between the amounts of wrongful death proceeds as they would be distributed under Kaiser to Stephen and Daniel, who are now both over the age of 21, close in age and similarly situated in life, would be neither equitable nor appropriate.
Acquafredda and Deviating from Kaiser
As the first appellate court to undertake a review of the Kaiser formula, the Appellate Division, Second Department declared, in Acquafredda, that “there is no imperative for the automatic application of Kaiser . . . , that the Surrogate is vested with discretion and with equitable powers as to the proportional allocation of wrongful death proceeds, and that the Surrogate did not improvidently exercise his discretion in declining to utilize the Kaiser formula” (Acquafredda at 506).
*632 In affirming the decision of the Suffolk County Surrogate’s Court to deviate from Kaiser in its method of distribution, the Appellate Division reviewed the changes in this area of estate law (id. at 507-510). Included in the Court’s historical review was the common-law prohibition against wrongful death recovery (see explanation in Whitford v Panama R.R. Co., 23 NY 465 [1861]), the early legislation permitting recovery for wrongful death with proceeds to be distributed as in intestacy, and the later introduction of legislation that required wrongful death damages to be distributed to a decedent’s spouse and children in proportion to their respective losses (see L 1949, ch 639). The Court ended its review with the Kaiser decision, in which the Kings County Surrogate’s Court used an arithmetic formula to calculate the distributees’ proportionate shares.
The Appellate Division noted in Acquafredda that the Kaiser formula has “advantages of ease, simplicity, and predictability,” but that, more often than not, the formula has been applied with deviations based on special circumstances (Acquafredda at 511, 513). In rendering its decision, the Appellate Division made it abundantly clear that the Kaiser formula is not the only method of determining proportionality and that the surrogate must use his or her discretion in evaluating the appropriate manner of apportioning wrongful death proceeds in any given proceeding (id. at 505; see also Matter of Duffy, 208 AD2d 1169 [3d Dept 1994]).
Factors to be Considered in Deviating from Kaiser
“The statutory provisions that govern the amount of recovery damages in wrongful death actions [EPTL 5-4.3] and those that govern the apportionment of any recovery among the beneficiaries entitled to participate therein [EPTL 5-4.4 (a) (1)] both use the same yardstick in requiring that such damages be measured and apportioned ‘in proportion to the pecuniary injuries suffered,’ and, therefore, the same tests are applicable [in theory] in both the action and the later distribution proceedings” (37 NY Jur 2d, Death § 451, citing Matter of Lilien, 139 NYS2d 128 [Sur Ct, Queens County 1955], and Matter of Pridell, 206 Misc 316, 319 [Sur Ct, Jefferson County 1954]).
Elements of pecuniary loss include, in addition to loss of support, loss of voluntary assistance and services, loss of possible inheritance, and loss of guidance and nurture (see Gonzalez v *633 New York City Hous. Auth., 77 NY2d 663, 668 [1991]). Other pertinent factors include: the relationship between decedent and distributees; the situation of the distributees and their condition in life; and whether the decedent voluntarily provided beneficial services to the distributees (see Matter of Pridell, 206 Misc at 319-320; Matter of Singleton, 96 Misc 2d 169 [Sur Ct, Bronx County 1978]).
Distribution in the Instant Proceeding
Application of the Kaiser formula in the instant proceeding works a gross injustice. Considering that decedent’s two youngest offspring are both in their early to mid-20s and just starting out in life, a Kaiser-based award of more than a quarter million dollars to Stephen, and just over $11,000 to Daniel, defies both logic and equity.[3]
In the exercise of its discretion and equitable powers, and consistent with petitioner’s request, this court allocates 18.37% of the net settlement proceeds to decedent’s conscious pain and suffering and 81.63% of the proceeds to wrongful death. Next, this court apportions the wrongful death proceeds (which, after deducting attorney’s fees and disbursements, total $1,658,015.45) as follows: $1,381,624.27 to petitioner as decedent’s surviving spouse, and $138,195.59 each to Stephen and Daniel. In reaching this apportionment, the court awards decedent’s spouse the Kaiser share she requested, and apportions wrongful death proceeds in equal shares to Stephen and Daniel in order to more accurately address the pecuniary loss suffered by each. The remainder of the net proceeds— $373,119.49 — which constitutes that portion of the settlement allocated to conscious pain and suffering, shall be distributed to petitioner as executrix of decedent’s estate.
Additionally, the court finds the requested attorney’s fees of $392,348.33 to be reasonable and in accordance with the sliding scale fee schedule attendant to counsel’s medical malpractice retainer agreement (see SCPA 1108 [2] [c]; 2110; Judiciary Law § 474-a). The court fixes disbursements in the sum of $26,516.73.
*634 Consistent with the foregoing determination, the following is a summary statement reflecting the allocation and distribution of the settlement proceeds:
Gross settlement amount: $ 2,450,000.00
Attorney’s fees: $ 392,348.33
Disbursements: $ 26,516.73
Net settlement proceeds: $ 2,031,134.94
Amount to be distributed to Deena Delmoro as executrix of decedent’s estate: $ 373,119.49
Amount to be distributed to Deena Delmoro as and for her pecuniary loss: $ 1,381,624.27
Amount to be distributed to Stephen Delmoro as and for his pecuniary loss: $ 138,195.59
Amount to be distributed to Daniel Delmoro as and for his pecuniary loss: $ 138,195.59
In the area of estate law, it is well settled that
“[t]he ends of equity are not always best served by arithmetic yardsticks. Experience has shown that there may be variations and factors calling for equitable adjustments to relax an otherwise inelastic application of Kaiser [198 Misc 582]. Its ‘years of dependency’ formula is not brittle, but malleable, and not beyond the exercise of the court’s sound discretion. No doubt the Kaiser allocation may be employed often, with no resulting imbalance. The history of the process reveals as much. Nevertheless, there are other instances, as in the case before us . . . , in which departure from Kaiser is within the boundaries of an informed discretion” (Matter of Acquafredda, 189 AD2d at 517).
While there are many instances in which the Kaiser formula yields an equitable result, such was not the case here. We remind the members of the bar that it is incumbent upon them in all wrongful death compromise proceedings to assess the elements of pecuniary loss and determine a reasonable method of distribution that is consistent with the statutory proportionality requirement, which meets the needs of the decedents’ distributees, and which brings about an equitable and just outcome.
Finally, in accordance with the foregoing determination: (1) the restrictions upon the letters are lifted in accordance with the foregoing settlement, and petitioner may execute and deliver general releases as required, together with any papers necessary to effectuate the compromise; and (2) petitioner’s account of these proceedings, as amended herein, is approved.

. The allocation set forth in the petition is 81.63265% to wrongful death and 18.36734% to conscious pain and suffering. These figures add up to 99.99999%. For simplicity’s sake, the court has rounded these percentages to the nearest 100th.

. The 38 and 40 year olds are decedent’s progeny from a former marriage. As both were over the age of 21 at the time of the decedent’s death, they do not receive wrongful death proceeds under Kaiser.

. Matter of Kaiser has been criticized for its consideration only of the number of years of dependency and its assumption that in each year each distributee is entitled to an equal amount (see Matter of Feld, 153 Misc 2d 615, 619 [Sur Ct, NY County 1992]; see also Matter of Maerkle, 44 Misc 2d 617 [Sur Ct, Broome County 1964] [in which the court reduced the amount of annual loss of support from $4,500 per year, resulting from application of the Kaiser formula, to $2,500 per year in order to achieve a more even distribution among three sisters who were barely two years apart in age]).