OPINION OF THE COURT
 

 Graffeo, J.
 

 On May 29, 1996, while walking on a roadway, Israel Rosner was struck by an automobile operated by Charles Mintz and owned by Leddy Mintz. As a result of the accident, Rosner suffered serious head injuries. At the time, Metropolitan Property and Casualty Insurance Company insured the Mintzes under an automobile liability policy with single limit coverage of $100,000. For a number of years previously, Metropolitan also provided a $1,000,000 personal excess liability policy to the Mintzes.
 

 After Metropolitan paid Rosner $100,000, the fall amount of coverage under the automobile policy, Rosner’s guardian initiated a declaratory judgment action in the United States District Court for the Eastern District of New York seeking a determination that the Mintzes’ personal excess liability policy remained in effect on May 29, 1996, the day of the accident. Metropolitan contended that the excess coverage policy was properly discontinued on May 25, 1996, just days before the accident. In response to cross motions for summary judgment, the District Court held in favor of Rosner, noting that Insurance Law § 3425 (a) (7) measured mandatory policy periods for personal line insurance policies from the date policies are executed rather than from the effective dates of coverage. Metropolitan appealed and the United States Court of Appeals for the Second Circuit, finding no definitive judicial interpretation of this section of the Insurance Law, certified the following question to this Court:
 

 “With reference to the facts of this case, does the phrase ‘the date as of which a covered policy is first issued’ as used in Section 3425 (a) (7) of the Insurance Law refer to (a) the date of execution of the policy; (b) its effective date; or (c) another date?”
 

 We accepted certification (96 NY2d 727) and now answer that the statutory language refers to the effective date of a policy.
 

 At the crux of this controversy lies the effect of statutory language governing the renewal and cancellation of personal
 
 *478
 
 lines insurance policies. The answer to the certified question, as noted by the Second Circuit, turns on the interpretation of sections 3425 (e) and 3425 (a) (7) of the Insurance Law.
 
 [1]
 
 Section 3425 (e) states:
 

 “With respect to personal lines insurance policies, no notice of nonrenewal or conditional renewal of a covered policy shall be issued to become effective during the required policy period unless it is based upon a ground for which the policy could have been cancelled.”
 

 Section 3425 (a) (7) defines the “required policy period” for personal lines insurance as “a period of three years from the date as of which a covered policy is first issued or is voluntarily renewed.” It is this provision that the Second Circuit found to be unclear. A review of the facts pertinent to the excess liability coverage provided by Metropolitan to the Mintzes illustrates the need to resolve the statutory ambiguity so aptly described by the Second Circuit
 
 (see,
 
 236 F3d 96).
 

 The Mintzes’ initial contract with Metropolitan for excess liability coverage became effective May 25, 1988. Pursuant to Insurance Law § 3425 (a) (2), Metropolitan had to comply with New York’s “required policy period,” found in section 3425 (a) (7) and thus granted the Mintzes two consecutive one-year renewals of the policy, continuing coverage through May 25, 1991. Upon termination of the first three-year coverage period, Metropolitan agreed to renew the policy with an effective date of May 25, 1991, thereby triggering a second three-year coverage period. A one-year renewal extended coverage from May 25, 1992 through May 25, 1993.
 

 During this policy year, Mr. Mintz’s employer instituted a group insurance program known as “metpay,” which allowed employees to purchase insurance at a group-rate discount through payroll deductions. The Mintzes enrolled in metpay in April 1993 and expected that the metpay payroll deduction plan would pay the premiums for their excess liability and automobile policies. Due to certain administrative errors by Metropolitan and oversights by the Mintzes, however, the
 
 *479
 
 excess liability policy was canceled on July 15, 1993 for nonpayment of premium.
 
 [2]
 

 In the fall of 1993, the Mintzes contacted Metropolitan regarding the status of their excess liability coverage. Their discussions culminated in Metropolitan issuing a new excess liability policy on October 11, 1993, effective May 25, 1993 through May 25, 1994, thereby providing continuous coverage from the last date the previous excess policy was in effect. Again, pursuant to the three-year required policy period of section 3425 (a) (7), the Mintzes and Metropolitan entered into two one-year renewals. Thus, coverage was continued through May 25, 1996, as indicated by the effective dates of coverage set forth in the policy.
 

 In February 1996, prior to the expiration of the policy, Metropolitan determined it would not renew the Mintzes’ excess liability policy because of “unacceptable liability exposure” due to certain automobile and homeowner’s claims filed by the Mintzes. On March 27, 1996, Metropolitan mailed a notice to the Mintzes, informing them that excess liability coverage would cease on May 25, 1996. Mr. Mintz requested that Metropolitan reconsider its decision, but the carrier refused. The parties’ Statement of Stipulated Facts in this case indicates that “Mr. & Mrs. Mintz knowingly elected to forego excess liability coverage after May 25, 1996, acknowledging that they understood that as of that date the [excess] policy was cancelled, the Mintzes deciding not to obtain replacement or similar coverage from any other insurers.” Four days later, the tragic automobile accident occurred.
 

 “[T]he starting point in any case of interpretation must always be the language itself, giving effect to the plain meaning thereof’
 
 (Majewski v Broadalbin-Perth Cent. School Dist.,
 
 91 NY2d 577, 583). “[M]eaning and effect should be given to all language of a statute * * *. Words are not to be rejected as superfluous where it is practicable to give each a distinct and separate meaning”
 
 (Cohen v Lord, Day & Lord,
 
 75 NY2d 95, 100;
 
 see also,
 
 McKinney’s Cons Laws of NY, Book 1, Statutes § 231, at 390). In the absence of any controlling statutory definition, we construe words of ordinary import with their usual and commonly understood meaning, and in that connection
 
 *480
 
 have regarded dictionary definitions as “useful guideposts” in determining the meaning of a word or phrase
 
 (Matter of Village of Chestnut Ridge v Howard,
 
 92 NY2d 718, 723;
 
 see also,
 
 McKinney’s Cons Laws of NY, Book 1, Statutes §§ 232, 234, at 392, 398).
 

 Here, we must determine the meaning of the phrase “the date as of which a covered policy is first issued” as used in section 3425 (a) (7). Our analysis focuses on two key terms: “as of’ and “issued.” The phrase “as of’ is frequently “used to signify the effective legal date of a document, as when the document is backdated or the parties sign at different times” (Black’s Law Dictionary 109 [7th ed 1999];
 
 see also,
 
 Garner, A Dictionary of Modern Legal Usage 80 [2d ed 1995] [same]). Further, “as of is justified only as a device for assigning an event to one time and the report or recognition of it to another” (Follett, Modern American Usage: A Guide 76 [Jacques Barzun ed 1966] [emphasis omitted]). The term “issue” has been defined as “[t]o send out or distribute officially” (Black’s Law Dictionary 836 [7th ed 1999]).
 

 Using these ordinary understandings of the phrase “as of,” and reading section 3425 (a) (7) in conjunction with the word “issue,” we hold that “as of’ refers to a date mutually agreed upon by the parties having some contractual significance, rather than merely referencing the date of an event, such as the execution or delivery of a document. If we were simply to apply the common definition of the term “issue” and hold that section 3425 (a) (7) refers to the execution or delivery date, such a result would effectively excise the phrase “as of’ from the statute, in derogation of the canons of statutory construction.
 

 Plaintiffs argue that the three-year policy period runs from the date a policy is issued by a carrier or when it is delivered to an insured. They contend that their position is supported not only by the plain meaning of the term “issue,” but also by the structure of section 3425 (a) viewed as a whole. They point to the definitions of “required policy period” for personal lines insurance other than automobile insurance
 
 (see,
 
 Insurance Law § 3425 [a] [7]) as compared to automobile insurance
 
 (see,
 
 Insurance Law § 3425 [a] [8]). The former measures the three-year term from the date the policy is “first issued” (Insurance Law § 3425 [a] [7]), while the latter provides for a one-year renewal term to commence from the date the policy “becomes effective” (Insurance Law § 3425 [a] [8]). Given this difference, plaintiffs contend the Legislature intended that the term for
 
 *481
 
 automobile insurance is to begin on the effective date of coverage, while the policy period for personal lines insurance is triggered on the date of execution or delivery of the policy. We disagree.
 

 The statutory predecessor to sections 3425 (a) (7) and 3425 (a) (8) was section 167-a of the Insurance Law. As enacted in 1974, the three-year bar against nonrenewability and cancellation originally applied to
 
 all
 
 personal lines insurance, including automobile insurance
 
 (see generally,
 
 L 1974, ch 1072; Report to Governor Hugh L. Carey and New York State Legislature from Superintendent of Insurance Albert B. Lewis, Personal Lines Insurance: An Evaluation of The Operation of Section 167-a of the Insurance Law [Mar. 1, 1979]). However, in 1979, the Legislature shortened the required policy period for automobile insurance to one year to “encourag[e] insurers to take reasonable underwriting risks without the present fear that errors of underwriting judgment will be burdens on them long after good business sense would dictate their elimination” (Mem of Senator John R. Dunne, 1979 NY Legis Ann, at 415). In creating a new subsection to reflect this amendment affecting automobile liability insurance (now codified at section 3425 [a] [8]), the Legislature left unchanged the provision at issue in this case (now codified at section 3425 [a] [7]).
 

 Contrary to plaintiffs’ contentions, the legislative history accompanying the 1979 amendments weighs against viewing the differences in the phrases employed in sections 3425 (a) (7) and 3425 (a) (8) as evidencing an intent to establish two different means of measuring required policy periods. The Sponsor’s Memorandum states that the purpose of the amendment was “[t]o establish more reasonable provisions for cancellation, non-renewal and conditional renewal of motor vehicle policies” (Mem of Senator John R. Dunne, 1979 NY Legis Ann, at 414). Similarly, the Governor’s Approval Memorandum explained that, despite the reduction in the required policy period for automobile liability insurance, “[t]he minimum three year policy period applicable to non-automobile personal lines policies is not altered by this bill” (Governor’s Approval Mem, 1979 NY Legis Ann, at 414). Finally, the Superintendent of Insurance stated that the “key terms” of the automobile liability insurance amendment were “essentially the same as those now contained in Section 167-a (1), except that [the] ‘required policy period’ is one year, rather than three years” (Letter from Superintendent of Insurance Albert B. Lewis to Governor’s Counsel, June 28, 1979, at 3, Bill Jacket, L 1979, ch 690).
 

 
 *482
 
 There is thus no indication in the legislative history that the beginning point for required policy periods for automobile liability coverage was adjusted from that of other personal lines policies. In fact, the legislative history is clear that the purpose of the amendment was merely to reduce the required policy period for automobile liability insurance policies from three years to one year and not to alter any other aspect.
 

 Further, we note that the practical implications of plaintiffs’ interpretation of section 3425 (a) (7) would run counter to the Legislature’s stated intent in enacting the law in 1974. As the Governor’s Approval Memorandum of section 167-a stated, the statute’s purpose was to “consolidate and simplify provisions of law under which insurers issuing automobile liability insurance policies or other personal lines insurance policies are prohibited from cancelling or failing to renew such policies for a period of 3 years” (Bill Jacket, L 1974, ch 1072, at 21, reprinted in 1974 NY Legis Ann, at 432). The Insurance Department submitted a Memorandum in support of the bill, noting that its purpose was “to provide a three year period of guaranteed renewability” and to establish “guaranteed continuity of coverage” within that term (Mem of Ins Dept, Jan. 24, 1974, Bill Jacket, L 1974, ch 1072, at 13, reprinted in 1974 NY Legis Ann, at 220, 221). If the statute is interpreted to designate the date on which a policy was executed or delivered, the three years of coverage will only run concomitantly where the insurer executes the policy on the day that coverage is effective. In instances where the effective date does not coincide with issuance or delivery of the policy, at least three troubling scenarios could develop.
 

 First, an insurer could agree to provide coverage beginning on a specified date and accept the premium, but fail to execute or deliver a written policy. In this situation, it is unclear under plaintiffs’ analysis how the required policy period would be applied. Second, if a policy were executed or delivered prior to its effective date, the required policy period would expire before three years have elapsed from the commencement of coverage. In other words, the insured could receive less than three years of coverage, a result that would contravene the express legislative purpose of the statute. Third, where — as here — a policy was executed or delivered after a stated effective date, an insurer would be required to maintain coverage in excess of three years.
 

 Interpreting the statute as we have is consistent with the legislative intent and purpose of this provision. Our view of the
 
 *483
 
 statute more accurately reflects the contractual arrangement between insured and insurer, and establishes a date certain upon which the parties can rely. Certainty in policy coverage periods is imperative in the insurance arena for both insureds and insurance companies.
 

 Accordingly, the certified question should be answered with option (b): With reference to the facts of this case, the phrase “the date as of which a covered policy is first issued” as used in section 3425 (a) (7) refers to the effective date of the policy.
 

 Chief Judge Kaye and Judges Smith, Levine, Ciparick, Wesley and Rosenblatt concur.
 

 Following certification of a question by the United States Court of Appeals for the Second Circuit and acceptance of the question by this Court pursuant to section 500.17 of the Rules of the Court of Appeals (22 NYCRR 500.17), and after hearing argument by counsel for the parties and consideration of the briefs and the record submitted, certified question answered as follows: With reference to the facts of this case, the phrase “the date as of which a covered policy is first issued” as used in Insurance Law § 3425 (a) (7) refers to the effective date of the policy.
 

 [1]
 

 . The application of Insurance Law § 3420 to this action has not been addressed by the parties and is not in issue before us.
 

 [2]
 

 . Metropolitan terminated coverage in accordance with Insurance Law § 3425 (c) (2), which articulates the limited grounds for which an insurer may cancel or refuse to renew a policy during the required policy period. Nonpayment of premiums is one such reason.