OPINION OF THE COURT
Karen V. Murphy, J.
Plaintiff moves this court pursuant to CPLR 3211 (b) to strike *532 the defenses interposed in defendants’ answer, for summary judgment in favor of plaintiff pursuant to CPLR 3212, and for injunctive relief pursuant to CPLR 6301.
Defendants cross-move to dismiss the complaint pursuant to CPLR 3211 (a) (3), (5) and (7) and to permanently enjoin plaintiff from utilizing Mental Hygiene Law § 9.13 as a basis to effectuate the discharge of children under the age of 16 from a state run inpatient facility.
In this action, the plaintiff director of Mental Hygiene Legal Service, Second Judicial Department (hereinafter MHLS), seeks, inter alia, a judicial declaration that, pursuant to section 9.13 (b) of the Mental Hygiene Law, a voluntary patient under the age of 16 has the right to request release from a hospital facility such as defendant Sagamore Children’s Psychiatric Center and that, pursuant to that provision, MHLS has the independent right to request the release of such a patient. Plaintiffs reading of the statute is, in part, at odds with the position of defendant New York State Office of Mental Health (hereinafter OMH), which is set forth by its counsel in a letter dated December 21, 2004. It reads, in pertinent part, as follows:
“As to children under the age of sixteen, since they do not have the ability to sign themselves in, I do not believe that they have the legal ability to sign themselves out of the facility, and the parent or guardian’s desire that the child be retained by the facility should be sufficient if an independent entity, a facility psychiatrist, agrees that the child continues to need hospitalization. MHLS can bring an action to have the child released, but it would be unlikely that a court would be persuaded that the parent (s) or guardian (s) wishes should be overruled if supported by the physician’s testimony that the child needs hospitalization. The MHLS position, which appears to be that all children who have been voluntarily committed by their parents/guardians can challenge that commitment, raises issues concerning age and maturity.”
Plaintiff MHLS also seeks to enjoin defendants OMH and Saga-more Children’s Psychiatric Center, operated by OMH, from denying either a voluntary patient under the age of 16, or plaintiff MHLS, the right to request such release.
Defendants seek dismissal of the complaint contending that plaintiff not only lacks the legal capacity and standing to bring this suit but is collaterally estopped from litigating the issue of *533 whether children under the age of 16 may procure their own discharge from hospitalization pursuant to section 9.13 (b) of the Mental Hygiene Law on the grounds that MHLS raised the same arguments contained in the amended complaint, and in support of its motion for summary judgment, in two prior habeas corpus proceedings brought in Supreme Court, Suffolk County: Matter of Mental Hygiene Legal Serv. (Camille H.) v Dubey (index No. 16383-05) and Matter of Mental Hygiene Legal Serv. v Sagamore Children’s Ctr. (Andrea H.) (index No. 029920-06).
As an initial matter, the court notes that notwithstanding defendants’ assertions to the contrary, plaintiff clearly has standing to litigate the legal question at issue herein by virtue of its mandate under Mental Hygiene Law § 47.03 (a) and (c), which provide that there must be a MHLS in each judicial department of the state whose duties include study and review of the admission and retention of all patients, including the willingness of the patient to remain in his or her status. MHLS was created specifically to represent individuals receiving care in state mental health system facilities as defined in Mental Hygiene Law § 1.03, including facilities such as defendant Saga-more Children’s Psychiatric Center. Section 47.03 (c) specifically empowers MHLS to “provide legal services and assistance to patients or residents . . . related to the admission, retention, and care and treatment of such persons” (Matter of Mental Hygiene Legal Serv. v Maul, 36 AD3d 1133, 1134 [3d Dept 2007], lv denied 8 NY3d 812 [2007]). Further, 22 NYCRR 694.2 (a) (6) (ii) requires that the Director of MHLS “ascertain that all requirements of law as to patients’ admissions, treatment and discharge affecting patients’ rights have been complied with.”
The court finds no merit in defendants’ contention that the instant action is barred by the doctrines of either res judicata or collateral estoppel which, unlike the affirmative defense of standing, were admittedly not asserted in defendants’ answer. Generally, defendants, such as those herein, who either fail to plead the defenses of res judicata or collateral estoppel in their answer, or to timely move to dismiss the complaint on those grounds, waive the right to assert the subject defense. (Ouyang v Jeng, 260 AD2d 618, 619 [2d Dept 1999].) In any event, the defenses are not applicable under the facts at bar as the critical issue of whether a voluntarily hospitalized patient under the age of 16, or MHLS, may petition for release pursuant to section 9.13 (b) of the Mental Hygiene Law was not previously *534 decided by the Suffolk County Supreme Court in either of the habeas corpus proceedings on which defendants rely.
Res judicata, or claim preclusion, is invoked to prevent a party, or one in privity with him, from relitigating a previously litigated action. This form of claim preclusion applies to all issues and theories of recovery applicable to the cause of action, whether or not they were actually litigated. Generally, once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based on different theories or even if seeking a different remedy. (Matter of State of New York v Seaport Manor A.C.F., 19 AD3d 609 [2d Dept 2005].) Moreover, the doctrine applies not only to the parties of record in the prior proceeding but also to those in privity with those parties. (Id.)
Collateral estoppel, or issue preclusion, is a corollary to the doctrine of res judicata. It bars relitigation of an issue (as distinguished from the action or claim), which was actually and necessarily previously raised and decided in a prior proceeding. (Buechel v Bain, 97 NY2d 295, 303 [2001], cert denied 535 US 1096 [2002].) To invoke the preclusion doctrine of collateral estoppel the following elements must be established: (1) the identical issue was decided in the prior action and is decisive in the present action; and (2) the party to be precluded from relitigating the issue had a full and fair opportunity to contest that very issue. (Allied Chem. v Niagara Mohawk Power Corp., 72 NY2d 271, 276 [1988], cert denied 488 US 1005 [1989].) The fundamental inquiry is whether litigation should be permitted in a particular case in light of fairness to the parties, conservation of resources of the court and litigants and the societal interests in consistent and accurate results. (Altegra Credit Co. v Tin Chu, 29 AD3d 718, 719 [2d Dept 2006].) Where the critical issue was not previously decided, however, neither res judicata nor collateral estoppel are applicable. (Matter of New York Site Dev. Corp. v New York State Dept. of Envtl. Conservation, 217 AD2d 699, 700 [2d Dept 1995].)
While Honorable Justice Loughlin noted in his August 18, 2005 opinion denying a writ of habeas corpus in Matter of Mental Hygiene Legal Serv. (Camille H.) that, lacking the ability to sign in as a voluntary patient, a child under the age of 16 cannot, on his or her own application “issue a voluntary release application,” the writ was denied on the basis that Camille H. could not be released due to the order of the Family Court (July 12, 2005, Genchi, J.) that provided that the patient was not to *535 be released until further order of the court. In Matter of Mental Hygiene Legal Serv. v Sagamore Children's Ctr. (Andrea H.), the court offered several rationales to support its denial of the writ of habeas corpus including, inter alia, the best interests of the child, Andrea H.’s history of mental illness, the need to prepare a safe discharge plan for her and the pending Family Court proceeding, in which the mother might regain custody of the child. Neither court directly addressed the issue of whether the patient before it could herself, or through her MHLS counsel, petition for release. The two habeas corpus proceedings were brought to challenge the legality of the further retention of two particular individuals, Camille H. and Andrea H., for inpatient care and treatment. Neither case dealt directly with the issue of statutory interpretation that is now before this court. Nor did the Appellate Division, Second Department, deal with the issue in its decision denying appeal in Matter of Mental Hygiene Legal Serv. v Dubey (31 AD3d 556 [2d Dept 2006]).
It is fundamental that a court, in interpreting a statute, should attempt to effectuate the intent of the legislature. (Majewski v Broadalbin-Perth Cent. School Dist., 91 NY2d 577, 583 [1998].) Since the clearest indicator of such intent is the statutory language, the starting point in any analysis must always be the language itself, giving effect to the plain meaning thereof. (Rosner v Metropolitan Prop. & Liab. Ins. Co., 96 NY2d 475, 479 [2001].) In the absence of any controlling statutory definition, words of ordinary import are to be construed in accordance with their usual and commonly understood meaning. (Matter of Village of Chestnut Ridge v Howard, 92 NY2d 718, 723 [1999].) Applying these fundamental principles here, in this court’s view, the language of section 9.13 (a) clearly states that a person under the age of 16 is a “voluntary patient” notwithstanding the fact that the patient may be received by the hospital as such only upon application of the parent, legal guardian, or next of kin. The statute specifically provides:
“§ 9.13 Voluntary admissions:
“(a) The director of any hospital may receive as a voluntary patient any suitable person in need of care and treatment, who voluntarily makes written application therefor. If the person is under sixteen years of age, the person may be received as a voluntary patient only on the application of the parent, legal guardian, or next-of-kin of such person, or, subject to the terms of any court order or any instru *536 ment executed pursuant to section three hundred eighty-four-a of the social services law, a social services official or authorized agency with care and custody of such person pursuant to the social services law, the director of the division for youth, acting in accordance with section five hundred nine of the executive law, or a person or entity having custody of the person pursuant to an order issued pursuant to section seven hundred fifty-six or one thousand fifty-five of the family court act.”
With respect to release, the last paragraph of section 9.13 (b) unequivocally states that, in the case of a patient under 18 years of age, notice requesting release may be given “by the patient, by the person who made application for his admission, by a person of equal or closer relationship, or by the mental hygiene legal service.” Nothing in the language suggests that a child under the age of 16 is not a voluntary patient and is precluded from seeking his or her own release. To interpret the language at issue to mean that a child under the age of 16 is not a voluntary patient, when it clearly includes such a child within the voluntary patient category, or to suggest, as defendants do, that it would be absurd or illogical for the legislature to invest a 14 or 15 year old, who lacks the maturity to make a decision as to the necessity of his or her own voluntary admission, with the legal capacity to seek discharge from treatment is, in this court’s view, untenable. This conclusion is consistent with Parham v J.R. (442 US 584 [1979]), which found that voluntary hospitalizations, under a statutory scheme similar to that of New York State, met due process standards. Footnote 20 (at 612) in that case makes reference to section 9.13 of New York’s Mental Hygiene Law with the parenthetical note “parent may admit, but child may obtain own release.”
Under the statute, any voluntarily committed patient may give written notice to the hospital director of his or her desire to leave whereupon the patient must promptly be released, unless the director determines that “there are reasonable grounds for belief that the patient may be in need of involuntary care and treatment” (Mental Hygiene Law § 9.13 [b]). In such a situation 14 NYCRR 15.7 provides as follows:
“(a) If a voluntary patient requests his release and there are reasonable grounds for belief that the patient may be in need of involuntary care and *537 treatment, the director may retain the patient for 72 hours.
“(b) Before the expiration of such 72-hour period, the director shall cause the patient to be examined by two physicians, or one physician and one psychologist if the patient is a resident in a school, who shall report their findings and conclusions separately to the director, and he shall either release the patient or apply to a court for an order authorizing the involuntary retention of such patient. The reports and certificates of the two examining physicians, or physician and psychologist, shall be submitted to the court as part of any such application.”
While defendants argue that just as minors under the age of 16 may not apply on their own behalf for voluntary admission to a mental health facility, so too, logically, minors under the age of 16 may not petition, on their own behalf, for discharge from such facility, the argument, along with defendants’ assertion that MHLS has no right to make such application on behalf of such a minor, flies in the face of a fair reading of the plain language of section 9.13 (b), which affords every voluntary patient, regardless of age and the manner in which he or she was admitted, the right to request a release and set the review process in motion, to wit:
“In the case of a patient under eighteen years of age, such notice requesting release of the patient may be given by the patient, by the person who made application for his admission, by a person of equal or closer relationship, or by the mental hygiene legal service.”
Undoubtedly, as plaintiff contends, the voluntary admission of a child to a psychiatric hospital and, by extension continued retention of the child, must be accomplished through procedures, which pass constitutional muster. In fact, the voluntary, involuntary and emergency civil commitment standards embodied in sections 9.13, 9.27 and 9.39 were found to meet the minimum requirements of substantive and procedural due process by the federal court in Project Release v Prevost (722 F2d 960 [2d Cir 1983]), which pointed out the procedural safeguards contained in the statute that include the provision of MHLS counsel to the patient and an opportunity for medical and judicial review of a patient’s commitment. The language employed in section 9.13 (b) affords *538 all voluntary patients (with no distinction made for those under 16 years of age) the right to advise the hospital of his or her wish to leave. There is nothing illogical or absurd about such a proposition. The request serves only to trigger the hospital’s obligation to examine the need for continuing care and treatment. It does not result in automatic release of the patient. It is the hospital director and, in many cases, the court who evaluates and ultimately determines whether a voluntary patient may be released, not the patient. Defendants’ fear that MHLS might subvert the statute in such a manner as to disregard the best interests of the child, as well as the wishes of parents and legal guardians, in an effort to blindly advance the civil rights of minor children receiving inpatient services at mental health hospitals is without basis in fact.
The statute contains no language, and defendants point to none, to support their argument that the legislature never intended to afford minors under the age of 16 the same degree of protection all other voluntary patients are afforded vis-a-vis the right to request release either personally or by their MHLS counsel.
Where, as here, no question of fact is raised, but only a question of law or statutory interpretation is presented on a motion to dismiss a declaratory judgment action, the court may render a determination and declare the rights of the parties. (Spilka v Town of Inlet, 8 AD3d 812, 813 [3d Dept 2004].)
Accordingly, plaintiff’s motion for summary judgment is granted and it is hereby declared that a minor under the age of 16 admitted to the hospital pursuant to Mental Hygiene Law § 9.13 (a) is a voluntary patient. The voluntary patient and the patient’s MHLS counsel have the right to request the patient’s release from hospitalization. Defendants, therefore, are enjoined pursuant to CPLR 6301 from taking any action to prevent either the patient or MHLS from seeking such release.
Defendants’ cross motion to dismiss the complaint pursuant to CPLR 3211 (a) (3), (5) and (7), and to permanently enjoin plaintiff and MHLS from utilizing Mental Hygiene Law § 9.13 as a basis for attempting to effectuate the discharge from hospitalization of minors under the age of 16, is denied for the aforementioned reasons.
Further, it is ordered that pursuant to CPLR 1019 Michael F. Hogan, Ph.D. is substituted in the caption for Sharon Carpinello *539 and the caption is amended accordingly; and it is further ordered that all records of this proceeding shall be sealed by the County Clerk pursuant to Mental Hygiene Law §§ 33.13 and 33.14 (b) and 22 NYCRR 694.7 to protect the identities of nonparty infants mentioned throughout the moving papers.