Rory A. McMahon Informal Opinion No. 2008-10 Corporation Counsel City of Syracuse 300 City Hall Syracuse, New York 13202
Dear Mr. McMahon:
You have requested an opinion as to the meaning of particular statutory language exempting city police officers from residing within the City. Public Officers Law § 3 generally provides that, in order to hold a local civil office, a person must reside within the political subdivision or municipal corporation by which he is employed. Public Officers Law § 3(1). Section 3 includes many exceptions to this general rule. The exception relevant here, relating to residency of police officers, provides that
 [n]either the provisions of this section or of any general, special or local law, charter, code, ordinance, resolution, rule or regulation, requiring a person to be a resident of the political subdivision or municipal corporation of the state for which he shall be chosen or within which his official functions are required to be exercised, shall apply to the appointment of a person as a member of the police force of any political subdivision or municipal corporation of the state if such person resides (a) in the county in which such political subdivision or municipal corporation is located; or (b) in a county within the state contiguous to the county in which such political subdivision or municipal corporation is located; or (c) in a county within the state contiguous to such political subdivision or municipal corporation; or (d) in a county within the state contiguous to a county described in item (c) hereof where the former is less than *Page 2 
fifteen miles from such political subdivision or municipal corporation, measured from their respective nearest boundary lines; or (e) in a county within the state contiguous to a county described in item (d) hereof where the former is less than thirty miles from such political subdivision or municipal corporation, measured from their respective nearest boundary lines.
Public Officers Law § 3(2) (emphasis added). Specifically, you have asked us whether the term "contiguous" as it is used in the underlined language above refers to counties that share a border with the county in which the political subdivision or municipal corporation that employs the police officer is located, or whether it refers to counties in close proximity to, but not touching, the county in which the political subdivision or municipal corporation is located.
You have explained that the City, which is located in Onondaga County, by charter provision requires that its officers and employees live within the City. Public Officers Law § 3(2) thus establishes an exception to the City's requirement for police officers. Your question as to the meaning of "contiguous" arises because Onondaga County and Oneida County do not share a border, but instead are separated by a portion of Madison County. Certain police officers would like to live in Oneida County. To be authorized to do so, Oneida County must be deemed to be "contiguous" to Onondaga County under Public Officers Law § 3(2).
As explained more fully below, we are of the opinion that "contiguous" in Public Officers Law § 3(2) means that the counties share a border, and therefore police officers for the City may not reside in Oneida County.
I. Analysis
We arrive at the conclusion that "contiguous" in Public Officers Law § 3(2) means that the counties in which police officers are authorized to live must share a border with or touch Onondaga County for several reasons. First, the ordinary meaning of "contiguous" supports the conclusion that the borders of the counties must touch one another. In the absence of any controlling statutory definition, the words of a statute generally should be construed according to their ordinary meaning. Rosner v. Metropolitan Prop. Liab. Ins. Co., 96 N.Y.2d 475,479 (2001); Sega v. State of New York, 60 N.Y.2d 183, 190-191 (1983). Public Officers Law does not provide a definition of "contiguous." Its primary ordinary meaning is "[s]haring an edge or boundary; *Page 3 
touching," The American Heritage Dictionary of the English Language 397 (4th ed. 2000), and "[t]ouching at a point or along a boundary,"Black's Law Dictionary 338 (8th ed. 2004).
Second, the term "contiguous" is used throughout Public Officers Law § 3(2). In many of those uses it would be entirely implausible to construe the term to mean "in close proximity," as has been proposed, rather than "touching." Subdivisions (c), (d) and (e) of section 3(2) provide that a member of the police force of any political subdivision or municipal corporation may reside
 (c) in a county within the state contiguous to such political subdivision or municipal corporation; or (d) in a county within the state contiguous to a county described in item (c) hereof where the former is less than fifteen miles from such political subdivision or municipal corporation, measured from their respective nearest boundary lines; or (e) in a county within the state contiguous to a county described in item (d) hereof where the former is less than thirty miles from such political subdivision or municipal corporation, measured from their respective nearest boundary lines.
In other words, this language allows a police officer of a municipal corporation that has an applicable residency requirement to reside within a county that is contiguous to the municipal corporation (County A); a county that is contiguous to County A and is within 15 miles of the municipal corporation (County B); or a county that is contiguous to County B and is within 30 miles of the municipal corporation (County C), as long as all of the described counties are within the State. Thus, this portion of section 3(2) authorizes a police officer to reside up to three counties away and 30 miles (from the border of the municipal corporation to the border of the county of residence) from the municipal corporation that employs him. If the term "contiguous" meant "close to but not touching," this stepwise description of counties would be entirely unnecessary, because any county with a border within a 30-mile radius of the border of the employing municipal corporation would qualify as "contiguous." Construing "contiguous" to mean "touching" is the most sensible construction of this language throughout section 3(2).
Third, construing "contiguous" to mean "touching" is consistent with the legislative history to section 3(2). Before the current "contiguous" language of section 3(2) was enacted, New York City required its police officers to live within New York *Page 4 
City's borders. See Governor's Memorandum on Approval, reprinted in 1960N.Y.S. Legislative Annual 591, 592. Police officers found this requirement difficult to meet because of the lack of affordable housing available within New York City's boundaries. Id. at 592. As a result, thousands of New York City police officers lived outside New York City in violation of the residency requirement. Id. Section 3(2) was amended in 1960 to allow police officers to reside in the county in which the municipality was located, in a county contiguous to the county in which the municipality was located, or in a county contiguous to the municipality. Act of Apr. 30, 1960, ch. 1084, § 1, 1960 McKinney's N.Y. Laws 1787. The provision allowing police officers to reside in counties "contiguous" to the municipality was meant to relieve police officers employed by New York City from having to live either within New York City or in violation of the law. Governor's Memorandum on Approval,reprinted in 1960 N.Y.S. Legislative Annual at 592.
An alternative bill allowing police officers to live in nearby counties was passed by the Legislature in the same session, but was not signed into law. This alternative bill provided that "[f]or purposes of this subdivision, any county separated from a city of more than one million inhabitants by not more than ten miles of public waters measured from the most southerly point of such county shall be deemed to be contiguous to such city." 1960 N.Y. Assembly Bill A.4627. This language defining "contiguous" was expressly designed to allow New York City police officers to live in Rockland County, which does not share a border with New York City but is separated by the Hudson River.[1]See Letter of the State Department of Civil Service (April 7, 1960),reprinted in Bill Jacket to ch. 1084, at 33 (recommending the adoption of A.4627 "[i]n view of Rockland County's close proximity to New York City and the ease of travel between that county and the City").
This amendment would have been unnecessary if "contiguous" meant "in close proximity," because Rockland County was separated from New York City by only several miles of water. This proposal was rejected by the Governor in favor of the bill that was enacted as chapter 1084, which he described as "more limited as to the *Page 5 
areas outside the employing municipality in which police officers may live." See Governor's Veto Memorandum to A.4627, reprinted in 1960N.Y.S. Legislative Annual 660.
The histories of these two bills confirm that the Legislature used the term "contiguous" to mean "touching" or "sharing a border" and not "in close proximity."
In summary, we conclude that the term "contiguous" as it is used in Public Officers Law § 3(2) means that borders must touch. Therefore, because the City requires its officers and employees to reside within the City, Public Officers Law § 3(2) authorizes a police officer for the City to reside within a county that touches Onondaga County. We thus further conclude that a police officer of the City may not live in Oneida County.
The Attorney General issues formal opinions only to officers and departments of state government. Thus, this is an informal opinion rendered to assist you in advising the municipality you represent.
Very truly yours,
KATHRYN SHEINGOLD Assistant Solicitor General In Charge of Opinions
[1] Subsequent amendments to section 3(2) added the final "contiguous" provisions, extending the distance and number of counties away from the employing municipality that a police officer can live. Act of Mar. 30, 1962, ch. 248, § 1, 1960 N.Y. Laws 1070; Act of Apr. 30, 1962, ch. 969, § 1, 1962 N.Y. Laws 3833; Act of Aug. 4, 1966, ch. 1004, § 1, 1966 N.Y. Laws 3481, 3481-82. *Page 1