=================================================================
This opinion is uncorrected and subject to revision before
publication in the New York Reports.
-----------------------------------------------------------------
No. 35
Yaniveth R., &c. et al.,
          Appellants,
       v.
LTD Realty Co. et al.,
          Respondents,
et al.,
          Defendants.
(And a Third-Party Action).


          Alan J. Konigsberg, for appellants.
          Susan Weihs Darlington, for respondents.
          Defense Association of New York, Inc.; New York City
Housing Authority; New York City Coalition to End Lead Poisoning
et al., amici curiae.


PIGOTT, J.:

          New York City adopted lead abatement legislation in
1982 that imposes a duty on landlords to remove lead-based paint
in any dwelling unit in which a child six years of age and under
resides (see Administrative Code of the City of NY former § 27-
2013[h][1] ["Local Law 1"]).  The issue in this case is whether a
child "reside[s]" in an apartment containing lead-based paint,

- 1 -

thereby triggering a landlord's duty under Local Law 1, when the child does not live in the apartment but spends approximately 50 hours per week there with a caregiver.

I.

Plaintiff Yaniveth R. was born in January 1997.  She lived with her father and mother, plaintiff Ramona S., in an apartment in the Bronx from early 1997 until 2002.  Yaniveth's paternal grandmother lived nearby on the first floor of an apartment building owned by defendants LTD Realty Company and LTD Realty Company LLC.  When Yaniveth was three months old, her grandmother began watching her five days a week at her apartment, from approximately 9:30 a.m. until 6:30 or 7:00 p.m., while Yaniveth's parents were at work.  Yaniveth returned to her parents' apartment each evening, where she lived with her mother, father and older sister.  According to both Ramona and Yaniveth's grandmother, Yaniveth did not live with the grandmother -- she lived only at her parents' apartment.

In January 1998, Yaniveth was found to have an elevated blood lead level.  The New York City Department of Health identified hazardous lead-paint conditions at the grandmother's apartment and issued defendants an Order to Abate.

In 2006, Ramona commenced this negligence action individually and on Yaniveth's behalf against defendants and related individuals.  Plaintiffs alleged that, because Yaniveth "spent a significant amount of time" in her grandmother's

apartment, defendants owed her a duty to abate the apartment of
hazardous lead conditions pursuant to former section 27-
2013(h)(1) of the Administrative Code, and that their failure to
do so caused plaintiffs' injuries.  Former section 27-2013(h)
provides:

> "The owner of a multiple dwelling shall
> remove or cover in a manner approved by the
> Department any paint or other similar
> surface-coating material having a reading of
> 0.7 milligrams of lead per square centimeter
> or greater or containing more than 0.5
> percent of metallic lead based on the non-
> volatile content of the paint or other
> similar surface-coating material on the
> interior walls, ceilings, doors, window sills
> or moldings in any dwelling unit in which a
> child or children six (6) years of age and
> under reside"

(Administrative Code former § 27-2013[h][1]).[1]

Defendants moved for summary judgment, arguing that,
under Local Law 1, they owed no duty to remove lead-based paint
from the grandmother's apartment because Yaniveth did not
"reside" there.  In the absence of a duty, defendants claimed,
there can be no negligence.

Supreme Court granted defendants' motion and dismissed
the complaint.  The Appellate Division unanimously affirmed,

---

[1]  Section 27-2013 (h) was subsequently repealed by the New
York City Childhood Lead Poisoning Prevention Act of 2003 (Local
Law 1 of 2004) and transferred to §§ 27-2056.1 et seq. of the
Administrative Code.  The parties agree that the version of Local
Law 1 enacted in 1982 was in force during Yaniveth's exposure and
applies to plaintiffs' claim.  Unless otherwise noted, "Local Law
1" as used in this opinion refers to Local Law 1 of 1982.

holding that defendants established prima facie that while the infant plaintiff was cared for at the apartment, during the day, she resided elsewhere, with her parents, and that "plaintiffs failed to raise an issue of fact as to the infant's residence" (120 AD3d 1142 [1st Dept 2014]).  We granted plaintiffs leave to appeal and now affirm.

## II.

"[A] landlord may be held liable for injury caused by a defective or dangerous condition upon the leased premises if the landlord is under a statutory or contractual duty to maintain the premises in repair" (Juarez v Wavecrest Mgt. Team, 88 NY2d 628, 643 [1996]).  Local Law 1 imposes such a duty, requiring landlords to "remove or cover" lead-based paint "in any dwelling unit in which a child or children six (6) years of age and under reside" (Administrative Code former § 27-2013[h][1] [emphasis added]).

This appeal turns on the meaning of the word "reside." Plaintiffs contend that we should interpret the term as broadly as possible, to include places in which a child is physically present or spends a substantial amount of time.  By that definition, plaintiffs claim Yaniveth "reside[d]" in her grandmother's apartment and therefore Local Law 1 required defendants to abate the premises of lead-based paint.  If, however, the word "reside" requires something more than mere physical presence in a place (as the courts below determined),

then Yaniveth did not "reside" in her grandmother's apartment, defendants did not owe a duty under the statute and plaintiffs' negligence claim must fail (see Juarez, 88 NY2d at 647; Rivera v Nelson Realty, LLC, 7 NY3d 530, 534 [2006] [dismissing plaintiff's complaint where neither the common law nor any statute imposed a duty on landlords to cover radiators in apartments in which young children live]).

Local Law 1 does not define the word "reside."  In the absence of a statutory definition, "we construe words of ordinary import with their usual and commonly understood meaning, and in that connection have regarded dictionary definitions as useful guideposts in determining the meaning of a word or phrase" (Rosner v Metro. Prop. & Liab. Ins. Co., 96 NY2d 475, 479-480 [2001]; see also Orens v Novello, 99 NY2d 180, 185-186 [2002] [relying on Merriam Webster's and Black's Law Dictionary to ascertain the meaning of the term "lay member" in Public Health Law § 230(6)]).

Dictionaries from the relevant time period define "reside" as "to dwell permanently or continuously: occupy a place as one's legal domicile" (Merriam Webster's New Collegiate Dictionary 1003 [9th ed 1986]) and "to have a settled abode for a time; have one's residence or domicile" (Webster's Third New International Dictionary 1931 [1981]).  According to Webster's Third, "reside" is the "preferred term for expressing the idea that a person keeps or returns to a particular dwelling place as

his fixed, settled, or legal abode" (id.).[2]  Black's Law

Dictionary notes that "residence" "is made up of fact and

intention, the fact of abode and the intention of remaining, and

is a combination of acts and intention.  Residence implies

something more than mere physical presence and something less

than domicile" (Black's Law Dictionary 1176 [5th ed 1979]).

        This understanding of the term "reside" is consistent

with the rule we set out in Matter of Estate v Newcomb (192 NY

238 [1908]).  Although plaintiffs cite Newcomb for the

proposition that "[r]esidence simply requires bodily presence as

an inhabitant in a given place, while domicile requires bodily

presence in that place and also an intention to make it one's

domicile" (id. at 250), our opinion made clear that "[r]esidence

means living in a particular locality," even if a person does not

intend to make that place a "fixed and permanent home," i.e., a

domicile (id. [emphasis added]).  As we stated more recently, a

person's "residence" entails "something more than temporary or

physical presence," with some "degree of permanence and an

intention to remain" (Dean v Tower Ins. Co. of NY, 19 NY3d 704,

708 [2012]).  Thus, "[a]lthough it is true that a person may have

more than one residence[,] . . . to consider a place as such, he

_____

        [2] Although dictionary definitions that equate "residence"
with "domicile" fail to recognize the legal distinction we have
drawn between those terms, they are a useful tool of statutory
construction to the extent that they reflect the common meaning
and usage of the term "reside" at the time the City Council
enacted Local Law 1.

must stay there for some length of time and have the bona fide intent to retain the place as a residence with at least some degree of permanency" (Hammerman v Louis Watch Co., 7 AD2d 817, 818 [3d Dept 1958]; see also Katz v Siroty, 62 AD2d 1011, 1012 [2d Dept 1978] [holding that plaintiff did not establish a second residence at his sister's apartment in Manhattan even though he kept a room there and occasionally stayed overnight for business because, citing the rule in Hammerman, he did not "have the bona fide intent to retain the place as a residence for some length of time and with some degree of permanency"]).

Nothing in the legislative history of Local Law 1 suggests that the City Council meant anything other than this understanding of the term "reside." We presume the City was familiar with the common meaning and usage of the words it used as well as existing decisional law (cf. Knight-Ridder Broadcasting Co. v Greenberg, 70 NY2d 151, 157 [1987]), which, in this case, understood residence as something more than physical presence but something less than domicile -- living in a particular place with the intent to retain it as a residence (see Newcomb, 192 NY at 250; Hammerman, 7 AD2d at 818). Had the City intended to expand the meaning of the word "reside" to include children who do not actually live in an apartment but spend significant amounts of time there, it could have used words to that effect (see Orens, 99 NY2d at 187).

Applying these principles of statutory construction to

Local Law 1, we agree with the courts below that Yaniveth did not "reside" in her grandmother's apartment. Both Ramona and Yaniveth's grandmother testified that Yaniveth did not live at the apartment, and there is no evidence in the record that they intended for her to live there or to retain the apartment as a residence. Yaniveth visited her grandmother's apartment during the day solely for the purpose of child care, while her parents were at work. Although a person may reside at more than one location, spending 50 hours per week in an apartment with a non-custodial caregiver is insufficient to impose liability on a landlord under Local Law 1.

Contrary to the dissent's assertion, we do not "eliminate[] the distinction between 'residence' and 'domicile'" or "effectively mean[] that a child may have only one 'residence'" under Local Law 1 (dissenting op at 5). We agree that a person may reside in more than one place, but that does not mean that every place in which a person spends time constitutes a residence. The question of whether a person "reside[s]" in a given location is a fact-driven inquiry that depends on the totality of the circumstances, and although there is no question of fact in this case that Yaniveth did not reside in her grandmother's apartment, there are a number of situations in which a child may reside in more than one apartment, such as in a joint custody situation or other shared living arrangement.

The courts below properly concluded that defendants

were entitled to summary judgment and that plaintiffs' claim, alleging violations of Local Law 1, was properly dismissed.  To the extent plaintiffs also alleged a breach of defendants' contractual duty to repair the premises based on traditional common law principles, that claim too must fail (see Chapman v Silber, 97 NY2d 9, 15 [2001] [holding that a plaintiff must show the landlord "knew that a young child lived in the apartment" to survive a defendant-landlord's motion for summary judgment in a lead paint poisoning case based on traditional common law principles and a landlord's contractual duty to repair]).

Accordingly, the order of the Appellate Division should be affirmed, with costs.

Yaniveth R. &c. et al. v LTD Realty Co. et al.

No. 35

FAHEY, J.(dissenting):

Plaintiff Yaniveth R. was born in January 1997.  For the first year of her life she spent days with her grandmother in an apartment owned by defendant LTD Realty Co.  She was there approximately 50 hours a week.

One year later, during a routine medical checkup she was diagnosed with an elevated blood lead level.  It is alleged that the exposure came from lead-based paint in the apartment.  Beyond that it is alleged that as a result of this exposure Yaniveth suffers from brain damage and various cognitive deficits.

The local law at issue was designed to prevent and protect children from the injuries we see in this case.

Here, at issue is Administrative Code of the City of New York former § 27-2013 (h) (1) (Local Law 1), which was enacted in 1982 and which required that

> "[t]he owner of a multiple dwelling . . .
> remove or cover in a[n] [approved] manner . .
> . . any paint or other similar surface-
> coating material having a reading of 0.7
> milligrams of lead per square centimeter or
> greater or containing more than 0.5 percent
> of metallic lead based on the non-volatile
> content of the paint or other similar
> surface-coating material on the interior
> walls, ceilings, doors, window sills or

moldings in any dwelling unit in which a
child or children six (6) years of age and
under *reside*" (emphasis added).

Local Law 1 was eventually repealed and transferred to

an article of Title 27 of the Administrative Code containing lead

poisoning prevention and control laws.  Administrative Code § 27-

2056.3 provides, in relevant part, that

"[t]he existence of a lead-based paint hazard
in any multiple dwelling where a child of
applicable age *resides* is hereby declared to
constitute a condition dangerous to life and
health. An owner shall take action to prevent
the reasonably foreseeable occurrence of such
a condition and shall expeditiously remediate
such condition and any underlying defect . .
. ." (emphasis added).

For its part, Administrative Code § 27-2056.5 (a)

contains a presumption that, "[i]n any multiple dwelling erected

prior to January 1, 1960, . . . the paint or other similar

surface-coating material in any dwelling unit where a child of

applicable age *resides* or in the common areas is lead-based

paint" (emphasis added).  Section 27-2056.18 of the

Administrative Code, in turn, defines " 'applicable age' " as

"'under seven years of age' for at least one calendar year from

[August 2, 2004]."  However, neither in that section nor in the

balance of the part of Title 27 in which the lead poisoning

prevention and control laws appear is the term "resides" defined.

Local Law 1, which the parties agree governs this case, similarly

did not define the term "reside" as used therein, and the

question of the meaning of that term is squarely before this

Court on this appeal.

I agree with the majority that, "[g]enerally, a landlord may be held liable for injury caused by a defective or dangerous condition upon the leased premises if the landlord is under a statutory or contractual duty to maintain the premises . . . ." (Juarez v Wavecrest Mgt. Team, 88 NY2d 628, 642 [1996]; see majority op. at 4). I also agree with the majority that Local Law 1 imposed such a duty inasmuch as it required landlords to "remove or cover" lead-based paint "in any . . . unit [of a multiple dwelling] in which a child or children six (6) years of age and under reside" (Local Law 1; see majority op. at 4). I disagree with the majority, however, to the extent it concludes that the word "reside," as used in Local Law 1, is to be narrowly interpreted so as to require that a person "liv[e] in a particular place with the intent to retain it as a residence" (majority op. at 7) and, by extension, to remove Yaniveth from the coverage of that law. For that reason I respectfully dissent and would reverse the Appellate Division order, deny the motion for summary judgment in its entirety, and reinstate the complaint as against defendant LTD Realty Co.

"In [any] matter[] of statutory interpretation, our primary consideration is to discern and give effect to the [enactor's] intention" (Matter of Albany Law School v New York State Off. of Mental Retardation & Dev. Disabilities, 19 NY3d 106, 120 [2012]). "[W]e must look first to the statutory text,

which is 'the clearest indicator of legislative intent' " (Matter of New York County Lawyers' Assn. v Bloomberg, 19 NY3d 712, 721 [2012], rearg denied 20 NY3d 983 [2012], quoting Majewski v Broadalbin-Perth Cent. School Dist., 91 NY2d 577, 583 [1998]). Our textual review must be conducted so as to give "the words employed" their "plain meaning" and "natural signification" (id. [internal quotation marks omitted]). Moreover, where, as here, there is no "controlling statutory definition, we [may use] dictionary definitions as 'useful guideposts' in determining the meaning of a word or phrase" (Rosner v Metropolitan Prop. & Liab. Ins. Co., 96 NY2d 475, 479-480 [2001], quoting Matter of Village of Chestnut Ridge v Howard, 92 NY2d 718, 723 [1999]).

At least one dictionary from the relevant time period defines "reside" as to "have a settled abode for a time: have one's residence or domicile" (Webster's Third New International Dictionary 1931 [1981]; see majority op. at 5). That dictionary specifies that "reside" "may be the preferred term for expressing the idea that a person keeps or returns to a particular dwelling place as his [or her] fixed, settled, or legal abode" (Webster's Third New International Dictionary 1931 [1981]; see majority op. at 5-6).

The same dictionary, however, acknowledges that "reside" had been defined as "to settle oneself or a thing in a place: be stationed: REMAIN, STAY," and as "to have an abiding place" (Webster's Third New International Dictionary 1931

[1981]).  Of course, a child may abide or be stationed in more than one place.  Consequently, the foregoing definition leaves open the possibility that a child may have more than one place of residence, which is perfectly consistent with this Court's conclusion in Matter of Newcomb that a person can have only one domicile, but may reside at more than one location (192 NY 238, 250 [1908] ["(A) person may have two places of residence . . . but only one domicile . . . .  Residence simply requires bodily presence as an inhabitant in a given place, while domicile requires bodily presence in that place and also an intention to make it one's domicile."]).

The intent of Local Law 1 is obvious: its enactors sought to shield young children, that is, those who cannot protect themselves, from the dangers of lead-based paint poisoning.  The will of a legislative body is discernable from its diction (see Bryant v New York City Health & Hosps. Corp., 93 NY2d 592, 602 [1999]), and the use of the word "reside" in Local Law 1 signals a desire to protect young children who may be exposed to lead-based paint in more than one location.  To conclude otherwise would be to say that a child -- any person, in fact -- may reside in only one place.  The majority opinion eliminates the distinction between "residence" and "domicile" established in Newcomb (192 NY at 250).  It effectively means that a child may have only one "residence."

The impact of today's decision transcends this case.

It threatens the ability of those young children who are covered by Local Law 1 and who were subject to either a joint custody agreement or a comparable shared living arrangement at the time of their exposure to lead-based paint to recover damages for their resultant injuries.  It threatens the ability of children who are covered by the successor to Local Law 1 (see Administrative Code § 27-2056.1 et seq.) and who are subject to similar living arrangements to recover damages for the same harm. It also beseeches a legislative response.

*   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

Order affirmed, with costs.  Opinion by Judge Pigott.  Chief Judge DiFiore and Judges Rivera, Abdus-Salaam, Stein and Garcia concur.  Judge Fahey dissents in an opinion.


Decided April 5, 2016