OPINION OF THE COURT
Michael L. Weisberg, J.
This is a holdover summary eviction proceeding. The subject apartment is located in a building receiving subsidy assistance by virtue of its participation in the National Housing Act § 221 (d) (3) (codified at 12 USC § 1715/ [d] [3]) Below Market Interest Rate (BMIR) program. The petition alleges that one of the tenants—respondent Rasheed Anthony—pleaded guilty to criminal sale of a controlled substance, a class B felony under Penal Law § 220.39,[1] after an undercover “buy and bust” arrest made at 273 West 114th Street, four blocks north of the subject building. As such, petitioner claims that it is entitled to terminate respondents’ tenancy under three paragraphs of the lease agreement:[2] paragraph 23 (c) (3) (“drug related criminal activity engaged in on or near the premises”), paragraph 23 (c) (4) (“determination made by the Landlord that a household member is illegally using a drug”), and paragraph 23 (c) (10) (discussed below). Respondent Alethia Smith has moved pre-answer to dismiss the petition, arguing that it fails to state a cause of action.
*385 Paragraph 23 (c) (10)
Paragraph 23 (c) (10), which is the last of 10 subsections under subsection “(c),” reads as follows:
“if the Landlord determines that the tenant, any member of the tenant’s household, a guest or another person under the tenant’s control has engaged in the criminal activity, regardless of whether the tenant, any member of the tenant’s household, a guest or another person under the tenant’s control has been arrested or convicted for such activity.”
The first thing one notices about this provision is its reference to “the criminal activity” (emphasis added), indicating reference to prior mentions of “criminal activity” in the lease. Paragraph 23 contains two subsections referencing criminal activity: paragraph 23 (c) (3), mentioned above and relied on by petitioner, and paragraph 23 (c) (6), which allows the landlord to terminate the lease for general (not specifically drug related) criminal activity under certain circumstances (discussed below). Accordingly, the phrase “the criminal activity” must refer back to these earlier paragraphs rather than creating an additional cause of action to those paragraphs.
Further support for that conclusion is contained in the substance of paragraph 23 (c) (10) itself, which makes clear that arrest or conviction based on the alleged criminal activity is not required for termination. Instead, it is sufficient that the landlord has “determined” that the activity has taken place. In other words, paragraph 23 (c) (10) only qualifies the eviden-tiary threshold for a cause of action under paragraph 23 (c) (3) and (6) rather than creating a cause of action in its own right.
Finally, were paragraph 23 (c) (10) to constitute a cause of action in its own right, then paragraph 23 (c) (3) and (6) would be redundant. If paragraph 23 (c) (10) means that engaging in any criminal activity anywhere were to be grounds for termination, then there would be no need for paragraph 23 (c) (3) and (6). A contract should be read to give effect to all its provisions (God’s Battalion of Prayer Pentecostal Church, Inc. v Miele Assoc., LLP, 6 NY3d 371 [2006]). Accordingly, the court holds that paragraph 23 (c) (10) is not its own cause of action for termination.
Paragraph 23 (c) (4)
With respect to petitioner’s claim that it has a cause of action under paragraph 23 (c) (4), the petition does not allege that petitioner has determined that any household member is illegally using a drug, nor does it contain any facts to support *386 such a claim. While facts alleged in the petition are accepted as true on a motion to dismiss for failure to state a cause of action, “dismissal of [a claim] is warranted if the plaintiff fails to assert facts in support of an element of the claim” (Connaughton v Chipotle Mexican Grill, Inc., 2017 NY Slip Op 03445[U], *4 [2017]). As such, the petition fails to state a cause of action under this provision of the lease.
Paragraph 23 (c) (3)
Turning to petitioner’s claim under paragraph 23 (c) (3), the question for the court is whether the alleged drug related criminal activity occurred “near the premises.”[3] Neither party has cited, nor has the court located, any decision, in any jurisdiction, which interprets the outer bounds of the area defined by “near the premises.” But relevant and useful by comparison is paragraph 23 (c) (6), which makes grounds for termination
“criminal activity by a tenant, any member of the tenant’s household!,] a guest or another person under the tenant’s control: (a) that threatens the health, safety, or right to peaceful enjoyment of the premises by other residents ... or (b) that threatens the health, safety, or right to peaceful enjoyment of their residences by persons residing in the immediate vicinity of the premises” (emphasis added).
So whereas drug related criminal activity is grounds for termination where it occurs “near” the premises, non-drug related criminal activity is grounds for termination if it threatens residents of other properties “in the immediate vicinity of the premises.”
The court turns therefore to the dictionary. “In the absence of any controlling statutory definition, we construe words of ordinary import with their usual and commonly understood meaning, and in that connection have regarded dictionary *387 definitions as ‘useful guideposts’ in determining the meaning of a word or phrase” (Rosner v Metropolitan Prop. & Liab. Ins. Co., 96 NY2d 475, 479-480 [2001]). The Oxford English Dictionary defines “near” as “to, within, or at, a short distance; to, or in, close proximity” (Compact Oxford English Dictionary 1152 [2d ed 1989]), while “vicinity” is defined as “the state, character, or quality of being near in space; propinquity, proximity” (id. at 1152).
“Vicinity” is thus effectively the noun version of “near.” But the language of the lease provides another clue as to the meaning of “near” by its use of a modifier “immediate” when describing the area within which general criminal activity may be grounds for termination. The criminal activity must occur not just in the vicinity (or near) the premises, but in the immediate vicinity of the premises. Accordingly, if “vicinity” and “near” refer to roughly the same distance, the area within which drug related criminal activity is grounds for termination is larger than for more general criminal activity, because “immediate vicinity” must refer to a shorter distance than “near.”
Respondent argues that the drug related criminal activity is only grounds for termination if it occurs within the “curtilage” of the premises, or at most, within 200 feet, deriving that distance from the Bawdy House Law (RPAPL 715). But limiting the scope of paragraph 23 (c) (6) to that distance would render the distinction between “immediate vicinity” and “near” as practically meaningless. This is because “immediate vicinity” as used in paragraph 23 (c) (6) must mean some distance greater than zero, because it explicitly is concerned with the effect of criminal activity on not just other tenants of the subject building, but also “persons residing in the immediate vicinity of the premises,” that is, people who do not live in the subject premises themselves. “Immediate vicinity” must therefore be some distance beyond the borders of the premises themselves, and “near” some distance further than that.
Prior to final promulgation of 24 CFR 5.858 and 5.859, the Secretary of the Department of Housing and Urban Development responded to comments about the proposed rules. As described in the Federal Register, one commenter questioned whether either “immediate vicinity” or “near” meant more than 1,000 feet (66 Fed Reg 28784 [2001]). The Secretary responded by stating that “[t]he courts will interpret these terms as part of endorsing or repudiating actions taken by PHAs [public housing agencies] under their standards” (id.). Here, the *388 distance between the subject premises and the address at which Anthony was arrested[4] is four New York City blocks (the size of which vary across the city), approximately 1,085 feet, or approximately 1,584 feet, depending on the method of measurement. According to Google Maps, using the pedestrian method of measurement (i.e., measuring the distance a pedestrian would have to travel between the two points), the arrest took place 1,584 feet (0.3 miles) away from the subject premises (Google indicates it would take six minutes to walk that distance at a rate of 20 minutes per mile). But using the straight-line method (i.e., “as the crow flies”) the distance is 1,085 feet (0.205 miles) (cf. People v Robbins, 5 NY3d 556 [2005] [holding that the straight-line method of calculation, not the pedestrian method, should be used to measure 1,000 feet in the context of New York law “drug-free buffer zone law” (Penal Law § 220.00 [14])]).
In the absence of other guidance, and having interpreted “near” the premises to mean a distance farther than one in the “immediate vicinity” of the premises, the court holds that the address of Anthony’s arrest is “near” the subject premises such that the petition states a cause of action.
Conclusion
Respondents’ motion is granted insofar as petitioner’s causes of action under paragraphs 23 (c) (4) and 23 (c) (10) are dismissed. The motion is otherwise denied.

. The statute concerns various substances (e.g., opiates, hallucinogens, methamphetamine) other than marijuana.

. Annexed to petitioner’s opposition to respondents’ motion is a copy of the lease between the parties. It is identical to the model lease annexed to United States Department of Housing and Urban Development Handbook 4350.3—Occupancy Requirements of Subsidized Multifamily Housing Programs, to which buildings participating in the section 221 (d) (3) BMIR program are subject. Paragraph 23 of the lease sets forth the procedure for terminating a tenancy and the “reasons” for which a tenancy might be terminated.

. The lease is required to have the “in, on, or near” language by 24 CFR 5.858 (“[t]he lease must provide that drug-related criminal activity engaged [in, on,] or near the premises ... is grounds for you to terminate [the] tenancy”). Section 5.859 contains the language in the lease concerning other criminal activity. And both sections 5.858 and 5.859 are referred to as a basis for termination in 24 CFR 247.3, that section setting forth the grounds for termination of tenancy in various subsidized developments, including section 221 (d) (3) developments. Sections 5.858 and 5.859 were promulgated in 2001. Section 247.3 was amended in 2001 to directly refer to these sections. Prior to 2001 section 247.3 did not refer to another section but itself stated that “drug-related . . . activity on or near [not ‘in’] such premises” was grounds for termination (24 CFR 247.3 [a] [3] [emphasis added]).

. The petition does not actually allege that the criminal activity took place at the address specified, but only that Anthony was arrested at that address. Respondent does not appear to challenge the use of that address as the location for the underlying criminal activity.