In the Matter of the Estate of LUKAS N. BALL, Deceased. ANGELA BALL, Respondent; JAMES L. HARRIS, Appellant. (And Another Related Proceeding.) [807 NYS2d 163]—

Peters, J. Appeal from an order and decree of the Surrogate's Court of Tompkins County (Rowley, S.), entered April 5, 2004, which, inter alia, adjudged decedent's father to be disqualified from taking an intestate share of decedent's estate.

Petitioner and respondent are the nonmarital parents of decedent (born in June 2001) who died in February 2003 while in daycare. Both parents applied for limited letters of administration to commence a wrongful death action. Petitioner objected to respondent's petition alleging, among other things, that he should be disqualified from taking an intestate share of decedent's estate either because of his abandonment of the child or his failure to provide him with adequate support. Respondent also sought petitioner's disqualification but later withdrew his objection. After motions for partial summary judgment were denied by Surrogate's Court, an evidentiary hearing resulted in respondent's disqualification. Respondent appeals.

Pursuant to EPTL 4-1.4 (a), "[n]o distributive share in the estate of a deceased child shall be allowed to a parent who has failed or refused to provide for, or has abandoned such child" (see Matter of Brennan, 169 AD2d 1000, 1000 [1991]; see also Matter of Arroyo, 273 AD2d 820, 820 [2000], lv denied 95 NY2d 763 [2000]).[1] On the issue of a duty to support, established precedent analyzes that obligation in accordance with Family Ct

---

1. A parent who is disqualified thereunder will also be precluded from receiving a share of wrongful death proceeds (see EPTL 5-4.4 [a] [2]; Matter of Arroyo, supra at 820; see also Matter of Caldwell v Alliance Consulting Group,

Act § 413 by determining whether respondent had the means to support the child and failed to do so as compared to a "mere[ ] unwilling[ness] to perform the[ ] parental obligation[ ]" (*Matter of Emiro*, 5 Misc 3d 1002[A], 2004 NY Slip Op 51149[U], *6; *see Matter of Brennan, supra* at 1000-1001; *Matter of Gonzalez*, 196 Misc 2d 984, 987 [2003]). On the issue of abandonment, however, the standard is less certain. A parent may be disqualified under EPTL 4-1.4 (a) if that parent "neglect[ed] or refus[ed] to fulfill the natural and legal obligations of training, care and guidance owed by a parent to a child" (*Matter of Arroyo, supra* at 820; *see Matter of Guilianelli*, 7 Misc 2d 171, 173 [1957]; *Matter of Musczak*, 196 Misc 364, 365-366 [1949]).[2]

Here, testimony revealed that petitioner notified respondent of her pregnancy in October 2000, which was at the end of their four-month casual relationship. Respondent doubted that decedent was his child due to petitioner's behavior, his previous inability to conceive a child with his ex-wife and his prior exposure to radiation. After an angry conversation with petitioner near the time that she informed him of her pregnancy, he ceased contact as she had requested. When decedent was born in June 2001, petitioner did not list respondent, or anyone else, as the father either on the birth certificate or the Medicaid application. Six months after decedent's birth, respondent was notified of the birth by counsel for petitioner. Respondent immediately called petitioner, set up a visit and saw decedent within days; it is undisputed that respondent gave petitioner money at that visit.[3] Thereafter, respondent independently initiated contact with the Seneca County Department of Social Services to enable decedent to receive disability benefits due to respondent's status. To trigger decedent's immediate entitlement, respondent admitted his paternity. This resulted in two payments totaling more than $3,000 and scheduled payments of approximately $240 a month. Moreover, in connection with petitioner's application for child support, respondent voluntarily gave a blood sample to establish his paternity. He saw the child a second time in June 2002 and gave petitioner money at that visit and one time thereafter before the order of filiation

6 AD3d 761, 765 [2004] [Lahtinen, J., dissenting], *lv denied* 3 NY3d 604 [2004]).

2. At least one court has explicitly adopted the standards set forth in Domestic Relations Law § 111 (2) (a) and (6), which would support a finding of abandonment sufficient to dispense with parental consent to an adoption (*see Matter of Gonzalez, supra* at 987).

3. The purpose of this payment and subsequent payments to petitioner are disputed. Petitioner contended that the funds were for payment of a loan; respondent asserted that they were for child support.

was entered on July 26, 2002 confirming his paternity. Thereafter, a minimal order of support was entered which was consistently paid by respondent.

Respondent claims that he made no less than eight phone calls between the first and second visit to set up additional visitation, which petitioner refused either out of a lack of trust of him, his new girlfriend, or upon it being conditioned to the provision of additional money; petitioner confirmed that respondent made some calls, but claimed that he never "ma[de] a direct point to ask to see [decedent]." Petitioner commenced a custody proceeding in June 2002 and respondent filed a cross petition for custody in September 2002. In that petition, before this proceeding could even be conceptualized, respondent alleged that he did not know of the child's birth until January 1, 2002, that petitioner has refused him access and that he was ejected from petitioner's life in 2000.

Respondent further testified that to facilitate visitation with decedent, he invited petitioner to inspect his home and meet his fiancée, but she refused. He also offered to babysit decedent during the day as an alternate to daycare. The visitation petition was settled with petitioner having sole custody and respondent having visitation as they agreed. From the entry of that order until decedent's death, however, no visitation occurred. Respondent testified that this was despite his efforts, and that he intended to re-petition Family Court, as he was told to do, if the visitation did not work out within a six-month period. Finally, respondent admitted to receiving a workers' compensation settlement for $11,000, prior to the entry of the support order but after his visits with decedent, which he did not disclose either to petitioner or the Support Magistrate.

Surrogate's Court found that respondent's failure to disclose the workers' compensation settlement to petitioner or the Support Magistrate was sufficient to conclude that he failed to adequately support decedent. We disagree. Considering his voluntary payments prior to the order of support, the undisputed evidence that he kept current with his monthly support payments and his independent facilitation of decedent's receipt of Social Security benefits, we cannot conclude that the withholding of the workers' compensation settlement was sufficient, by itself, to support Surrogate's Court's finding (*compare Matter of Arroyo*, 273 AD2d 820 [2000], *supra*; *Matter of Brennan*, 169 AD2d 1000 [1991], *supra*; *see Matter of Baecher*, 198 AD2d 221, 221 [1993], *lv denied* 83 NY2d 751 [1994]).

Nor do we find sufficient evidence to support Surrogate's Court's finding that respondent abandoned decedent. Although

Surrogate's Court emphasizes that respondent only had two visits over the 19 months that decedent was alive, with contact to petitioner less than 10 times, overwhelming testimony supports respondent's contention that he was not aware of decedent's birth until late December 2001, early January 2002. Most pointedly, all of the claims he now makes as to a denial of access by petitioner were those echoed in his petition for custody. We also cannot ignore record evidence of his continued efforts to establish his legal rights to this child.

Mercure, J.P., Mugglin, Rose and Kane, JJ., concur. Ordered that the order and decree is modified, on the law and the facts, without costs, by reversing so much thereof as dismissed respondent's application and disqualified him from receiving an intestate share of decedent's estate; matter remitted to the Surrogate's Court of Tompkins County for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.