Matter of Martirano (2019 NY Slip Op 03726)





Matter of Martirano


2019 NY Slip Op 03726


Decided on May 9, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: May 9, 2019

527734

[*1]of CHRISTOPHER M. MARTIRANO, Deceased. NIKKO CRUZ, as Executor of the Estate of CHRISTOPHER M. MARITRANO, Deceased, Respondent; MICHAEL A. HAWLEY, Appellant, and LINDA HAWLEY, Respondent, et al., Respondents. (Proceeding No. 1.) (And Another Related Proceeding.)
In the Matter of the Estate of CHRISTOPHER M. MARTIRANO, Deceased. MICHAEL A. HAWLEY, Appellant; LINDA HAWLEY, Respondent, et al., Respondents. (Proceeding No. 3.)

Calendar Date: March 18, 2019

Before: Egan Jr., J.P., Lynch, Clark, Devine and Pritzker, JJ.


Hug Law, PLLC, Albany (Matthew C. Hug of counsel), for appellant.
Blatchly & Simonson, New Paltz (Annette G. Hasapidis of counsel), for Linda Hawley, respondent.



MEMORANDUM AND ORDER
Egan Jr., J.P.
Appeals (1) from an order of the Surrogate's Court of Ulster County (McGinty, S.), entered April 12, 2018, which, in proceeding No. 3, among other things, granted respondent Linda Hawley's motion for summary judgment dismissing the petition, and (2) from a decree of said court, entered May 14, 2018, which, in proceeding No. 1, dismissed respondent Michael A. Hawley's objections to probate the last will and testament of decedent.
Christopher Martirano (hereinafter decedent) died in July 2014 at the age of 48. Decedent was not married, has no issue and was survived by, as relevant here, his mother, respondent Linda Hawley (hereinafter the mother), and his brother, Michael A. Hawley (hereinafter the brother)[FN1]. Three days before his death, decedent executed a last will and testament that left the majority of his estate to petitioner Nikko Cruz and Dennis Helliwill, his friends and employees of his cleaning business. In November 2014, Cruz, as executor,[FN2] filed a petition for probate (proceeding No. 1) and was granted preliminary letters testamentary [FN3]. In April 2016, the brother filed objections to probate, which Cruz answered. The brother then filed a separate petition (proceeding No. 3) seeking a determination as to the proper intestate distributees of decedent's estate, arguing that the mother had failed to provide for and/or abandoned decedent as a child such that she is disqualified from receiving a distributive share of decedent's estate pursuant to EPTL 4-1.4 (a) (1). Cruz then moved to dismiss the brother's objections to probate, claiming that the brother lacked standing because he was not named in the will or otherwise entitled to a distributive share of decedent's estate through intestacy, as the mother was still alive. The brother opposed Cruz's motion and cross-moved to stay any further proceedings with respect to his objections pending the outcome of his petition against the mother. The mother filed her answer to the brother's petition in July 2016.
In December 2016, Surrogate's Court (Work, S.) held that the dispositions to Helliwell and Cruz contained in decedent's last will and testament were void insofar as Helliwell and Cruz were the only attesting witnesses to the execution of the will (see EPTL 3-3.2 [a] [1]) and, as such, said dispositions were to pass through intestacy (see EPTL 3-3.2 [a] [3] [B]). Surrogate's Court reserved decision on the pending standing issue, finding that probate of the will could not proceed without a decision on the brother's petition, as the brother's standing was contingent upon whether he could prove that the mother abandoned and/or failed to provide for decedent. Surrogate's Court then adjourned the matter pending discovery and a trial on the brother's petition.
Following a pretrial conference, Surrogate's Court (McGinty, S.) directed the brother to file a motion in limine with respect to the admissibility of various foreign records that were maintained by the Catholic Welfare Bureau (hereinafter the CWB), a social service and foster care agency in Canada. Following the parties' submissions, Surrogate's Court partially granted the brother's motion, by admitting certain documents subject to proper authentication as business records, and partially denied the motion by precluding other documents as unreliable hearsay. The mother thereafter moved and the brother cross-moved moved for summary judgment on the brother's petition. By order entered in April 2018, Supreme Court denied the brother's cross [*2]motion, determining that he had failed to meet his burden demonstrating that the mother voluntarily abandoned and/or failed to provide for decedent, and granted the mother's motion for summary judgment dismissing the petition, finding that she was qualified to inherit an intestate share of decedent's estate. Based on its holding, Surrogate's Court further determined that the brother lacked standing to challenge decedent's will and entered a decree to that effect. The brother now appeals from both the order and the decree.
On a motion for summary judgment, the movant has the initial burden to establish its prima facie entitlement to summary judgment as a matter of law by submitting evidentiary proof in admissible form, demonstrating the absence of any material issues of fact (see CPLR 3212; Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986]; Matter of Clark, 119 AD2d 947, 948 [1986]). Only when a prima facie showing has been made does the burden shift to the nonmoving party to demonstrate the existence of a triable issue of fact (see Alvarez v Prospect Hosp., 68 NY2d at 324; Davis v EAB-TAB Enters., 166 AD3d 1449, 1450 [2018]). As relevant here, EPTL 4-1.4 (a) provides that "[n]o distributive share in the estate of a deceased child shall be allowed to a parent if the parent, while such child is under the age of [21] years . . . has failed or refused to provide for the child or has abandoned such child" (see Matter of Ball, 24 AD3d 1062, 1062 [2005]; Matter of Arroyo, 273 AD2d 820, 820 [2000], lv denied 95 NY2d 763 [2000]). In determining whether a parent may be disqualified for failure to support, the key inquiry is "whether [the parent] had the means to support the child and failed to do so" (Matter of Ball, 24 AD3d at 1063; see Matter of Brennan, 169 AD2d 1000, 1000-1001 [1991]; see also Family Ct Act § 413). With regard to abandonment, "a parent may be disqualified under EPTL 4-1.4 (a) if that parent [voluntarily] neglected or refused to fulfill the natural and legal obligations of training, care and guidance owed by a parent to a child" (Matter of Ball, 24 AD3d at 1063 [internal quotation marks, brackets and citations omitted]; see Matter of Pessoni, 11 Misc 3d 245, 246 [Sur Ct 2005]).
In support of her motion, the mother submitted, among other things, her own affidavit summarizing the extent of her relationship with decedent during his childhood. According to her, decedent was born on December 24, 1965 in Canada, the youngest of four children born to the mother and the children's father. During that time, the children's father was in and out of jail and she struggled to provide for the children, as she did not have a "significant educational background or marketable skills." In the spring/summer of 1966, the mother allowed the oldest child to stay with a paternal uncle and his wife and, subsequently, allowed her three youngest children, including decedent — who was just an infant — to visit with their father, who had recently been released from prison. Neither the paternal uncle nor the children's father returned the children to her custody, and it was not until September 1967 that the mother learned that the children were in an orphanage run by Catholic Charities in Montreal, Canada.
After discovering that the children were in the care and custody of Catholic Charities, she was not permitted to take custody of the children and cooperated with Catholic Charities' program requiring her to, among other things, establish a stable home prior to being reunified with the children. Over the next several years, the mother visited the children approximately twice a month. In the interim, she divorced the children's father in September 1970 and, as part of said proceeding, obtained legal custody of the children. Thereafter, she regained physical custody of the two oldest children in 1971, she remarried in 1972 and, in 1973, she regained physical custody of the next oldest child. In 1973, however, the mother relocated with her husband and the three oldest children to British Columbia, Canada, leaving decedent in Montreal. According to the mother, Catholic Charities refused to return decedent at that time because he had certain developmental issues, and it was decided that he would be better off obtaining the educational services that were available in Montreal. The mother indicated that, following her move to British Columbia, she continued to have telephone contact with decedent approximately two times a month, sent him birthday and Christmas gifts, returned to visit him in 1975, 1977, 1979 and 1981 and thereafter arranged a visit for him to British Columbia in 1981. Following this visit, decedent returned to Montreal where he graduated from school before leaving Catholic Charities. From 1981 to 1993, the mother did not speak with decedent. In 1993, she resumed contact with him via telephone and, in 1998, she visited him for two weeks in New York City [*3]and avers that she thereafter continued to speak with him regularly over the telephone until his death in July 2014.
In support of his cross motion, the brother submitted, among other things, the mother's deposition testimony, his own deposition testimony and decedent's records from the CWB [FN4]. The mother's deposition testimony largely mirrored her affidavit, providing additional details involving the extent of her relationship with decedent. Upon our review of the evidence proffered in support of the motions for summary judgment, we find that neither the mother nor the brother met their prima facie burden of establishing, as a matter of law, their entitlement to summary judgment on the issue of whether the mother had voluntarily abandoned decedent or failed to provide for him. With regard to abandonment, the mother admits that between the spring of 1966 and September 1967, she made no efforts to get decedent back from the father nor contacted the police or any other social services agency to help locate him [FN5]. Upon learning that decedent had come into the care of Catholic Charities and thereafter obtaining legal custody of decedent in 1970 as part of her divorce proceeding, she took no steps to gain actual physical custody of decedent. Although the mother claims that she never intended to voluntarily abandon decedent, on the record before us, we find there is a triable issue of fact as to whether her efforts to maintain a relationship with decedent during his childhood were sufficient to "fulfill the natural and legal obligations of training, care and guidance owed by a parent to a child" (Matter of Arroyo, 273 AD2d at 820; compare Matter of Ball, 24 AD3d at 1064-1065; Matter of Pessoni, 11 Misc 3d at 246-247; Matter of Gonzalez, 196 Misc 2d 984, 988 [Sur Ct 2003]). From the time that decedent was found abandoned in 1966 until 1981, it is undisputed that decedent never resided with the mother or his biological family. The mother's affidavit and her deposition testimony contain numerous inconsistencies as to dates, including how many times she may have visited decedent between 1973 and 1981, and provides little detail as to the extent and quality of her visitations with decedent and her interactions with Catholic Charities and decedent's foster family during this time. Significantly, the brother testified that neither he nor his other siblings were even aware of decedent's existence until he visited their home in British Columbia in 1981.
We likewise find that, with regard to financial support, a question of fact remains as to whether the mother had the financial means available to provide for decedent and failed to do so. Although the mother gave birth to four children before the age of 21 and received public assistance for a time, there is insufficient evidence in the record with respect to the status of her finances thereafter to support the determination by Surrogate's Court. The mother acknowledged that, for the approximately 14 years that decedent was in foster care, she did not financially provide for decedent other than certain unspecified cash gifts. She further testified that, had she [*4]obtained physical custody of decedent, she would have been able to financially provide for him to the degree that "[they] always made due." However, following her move to British Columbia, there is no evidence in the record with respect to the mother's employment or ability to work, she did not receive public assistance during this time period and her husband worked for a construction firm such that they were able to adequately provide for their other children. Notably, the mother had the financial ability to make a transcontinental move with her three children in 1973 and was similarly financially able to make the approximately 3,000-mile trip to visit her mother and decedent in Montreal approximately every two years thereafter. Moreover, the lack of a child support order regarding decedent does not, standing alone, absolve her of her duty as a parent to provide for him. On the record before us, therefore, we find that it was error for Surrogate's Court to grant the mother summary judgment dismissing the brother's petition on the issue of whether she had the financial means and failed to support decedent (compare Matter of Ball, 24 AD3d at 1063; Matter of Brennan, 169 AD2d at 1000-1001). In light of our holding, the May 14, 2018 decree of Surrogate's Court must be reversed.[FN6]
Lynch, Clark, Devine and Pritzker, JJ., concur.
ORDERED that the order entered April 12, 2018 is modified, on the law, without costs, by reversing so much thereof as granted respondent Linda Hawley's motion for summary judgment dismissing the petition in proceeding No. 3; said motion denied, and matter remitted to the Surrogate's Court of Ulster County for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.
ORDERED that the order entered May 14, 2018 is reversed, without costs.



Footnotes

Footnote 1: Decedent was also survived by another brother and a half sister, neither of whom have answered or otherwise appeared in these proceedings.

Footnote 2: Decedent's will named Helliwell as executor; however, due to a prior felony conviction, he was disqualified from serving in that capacity and Cruz was appointed as the named alternate executor.

Footnote 3: In August 2015, the brother sought to, among other things, revoke Surrogate's Court's grant of preliminary letters and, following a hearing, Surrogate's Court issued amended letters imposing certain restrictions on Cruz's authority as fiduciary, but otherwise extended Cruz's appointment. The brother also attempted to file a petition for the issuance of limited letters of administration; however, Surrogate's Court did not accept this petition for filing because decedent's will had already been offered for probate.

Footnote 4: We find no error with the ruling of Surrogate's Court as to the admissibility of the CWB records. Initially, given the context in which the subject motion in limine was made, we find no abuse of discretion by the court's consideration of said motion on the merits, despite any procedural irregularities with the filing of the motion. Additionally, the CWB records were not admissible under the law of the case doctrine as Surrogate's Court (Work, S.) never rendered a determination as to the admissibility of the subject records when it ordered that a trial be held on the issue of abandonment (see Karol v Polsinello, 127 AD3d 1401, 1402-1403 [2015]; Scofield v Trustees of Union Coll., 288 AD2d 807, 808 [2001]). Moreover, the CWB records were not admissible under the foreign records exception as they were initially produced by a religious organization, not a foreign government, and, as such, did not constitute foreign official records (see CPLR 4542). Nor were the records admissible under the business records exception, as the brother failed to establish that they met the statutory requirements (i.e., establishing that such records were kept in the regular course of CWB's business — as opposed to Batshaw Youth and Family Services, CWB's successor) (see CPLR 4518 [a]; Tougher Indus., Inc. v Dormitory Auth. of the State of N.Y., 130 AD3d 1393, 1396 [2015]), and there was no demonstration that the entrants of these records had personal knowledge of the events reported or were otherwise under a business duty to report same (see generally Matter of Leon RR., 48 NY2d 117, 122-123 [2008]).

Footnote 5: In 1966, after the mother permitted the father to take decedent and two of his siblings, the children were abandoned at various locations in Montreal — two of them were left at a bus station and the other was left at a department store.

Footnote 6: Given that a trial is required, the mother concedes in her brief that the agreement that she entered into assigning her right to decedent's estate to Cruz in return for $50,000, plus legal fees, is admissible at trial.